ALLSTATE INSURANCE COMPANY, a corporation, Plaintiff-Appellee,

v.

INTERNATIONAL SHIPPING CORP., a Florida corporation, Defendant-Appellee,

Gulf Caribbean Marine Lines, Inc., a corporation, Defendant-Appellant.

No. 81–5612.

United States Court of Appeals, Eleventh Circuit.

April 18, 1983.

Robert B. Parrish, Jacksonville, Fla., Richard F. Ralph, Miami, Fla., for defendant-appellee.

Timothy J. Armstrong, Batchelor, Brodnax, Guthrie, Armstrong & Freyer, Miami, Fla., for plaintiff-appellee.

Before KRAVITCH, HATCHETT and CLARK, Circuit Judges.

KRAVITCH, Circuit Judge:

In this case we are asked to construe a short-form bill of lading in order to decide whether this action was barred by a statute of limitations arguably incorporated therein. The district court permitted the action. We AFFIRM.

Alumax Extrusions, Inc. ("Alumax") manufactures aluminum extrusions. This suit arose when extrusions manufactured by Alumax for certain customers in Puerto Rico were damaged by the elements prior to arrival. When the damaged extrusions reached Puerto Rico they were characterized a "constructive total loss."

After manufacture, the extrusions at issue were nested, bundled, and placed in sealed container trailers. Alumax then engaged International Shipping Corp. ("International"), a freight forwarding agent, to arrange shipment of the extrusions. Although International initially sought to ship the containers on a "roll-on roll-off" vessel in Miami, a longshoreman's strike eliminated this possibility. International therefore contracted with Gulf Caribbean Marine Lines, Inc. ("Gulf Caribbean") to ship the extrusions to Puerto Rico.

Gulf Caribbean operates a break-bulk warehouse barge service from Mobile, Alabama to San Juan, Puerto Rico. As a break-bulk shipper, Gulf Caribbean does not ship trailers or containers, but opens all containers prior to shipment. The district court specifically found, however, that International never was notified of Gulf Caribbean's policy of unloading all container goods. The district court further found the Gulf Caribbean agent was aware the extrusions would arrive in container trailers. When the Alumax trailers arrived in Mobile, Gulf Caribbean agents broke the seals, unloaded the extrusions, and placed them outdoors, unprotected from the elements, on pallets. All extrusions were checked and found to be in good condition on or about November 9, 1977.

Despite conflicting evidence as to when, and upon which vessel, the extrusions would be shipped the district court found an "initial sailing date" scheduled for December 7, 1977. As it happened, the extrusions finally were shipped to Puerto Rico on the ISLA DEL SOL on December 21, 1977. The extrusions arrived damaged. The National Weather Service's monthly summaries indicate 10.73 inches of rain fell on Mobile between November 10 and December 21, 1977. The district court found "the direct and proximate cause of the damage sustained by the cargo was attributable to exposure to the elements while being stored on a pier without protective covering of any kind from a period varying between 30 to 40 days, depending upon the particular trailer load." The district court discounted as proximate cause the activities of any other party before us, specifically declining to find that the International agent knew Gulf Caribbean carried only "break-bulk" cargo.[1]

Allstate Insurance Company ("Allstate") is Alumax' insurer. Although Alumax was notified of the injury to the cargo within days of the ISLA DEL SOL's early January 1978 arrival in Puerto Rico, it was not until almost a year later, on January 5, 1979, that Allstate paid Alumax. As Alumax' subrogee Allstate then brought suit against International on April 26, 1979 for the loss sustained. That action was dismissed and Allstate filed this action against both International and Gulf Caribbean on August 24, 1979, approximately one year and eight months after the damaged goods were delivered. Among the defenses asserted below by Gulf Caribbean was a one-year statute of limitations arguably incorporated in the short-form bill of lading.

As between Allstate and Gulf Caribbean, the district court found for Allstate, holding

---

1. In so finding, the district court noted that the bills of lading forwarded to International for payment at the time of shipment read "1 trailer" although in fact no trailers were loaded aboard the warehouse barge, which does not carry container trailers. Accordingly, the district court resolved conflicting testimony as to whether the contract was for shipment in trailers or shipment break-bulk in favor of International "inasmuch as the bills of lading [which stated 1 trailer] were prepared and issued by Gulf Caribbean."

that when Gulf Caribbean accepted custody of the extrusions it undertook all obligations imposed upon a shipper by the Harter Act, 46 U.S.C. §§ 190–196, including the responsibilities of a common law bailee. These obligations were violated by palletization and outdoor storage without notice to the shipper. The court further found that any limitation, including a statute of limitations, which Gulf Caribbean might seek to claim under its bill of lading, or statutes applicable thereby, was vitiated by the deviation of outdoor storage. As between Allstate and International, the district court ruled in favor of International, finding no breach of duty on the part of the freight forwarder. Gulf Caribbean appeals the district court's award of damages to Allstate. In addition Gulf Caribbean names its codefendant below, International, as an appellee, asking that we overturn as clearly erroneous the district court's findings of fact absolving International from liability.

▪ We turn first to the appeal against International. International claims the appeal as to them is frivolous, and seeks damages equal to the costs of the appeal. We agree. The appeal was frivolous, Fed.R. App.P. 38. Accordingly, we award International single costs of this appeal, including a reasonable attorney's fee, and remand for a hearing to that effect. *Church of Scientology of California v. McLean,* 615 F.2d 691, 693 (5th Cir.1980); *Turner v. Thompson,* 421 F.2d 771, 772 (5th Cir.1970).[2]

▪ As to Allstate, Gulf Caribbean claimed below that the action was barred because it was filed outside of a one-year statute of limitations arguably applicable. The district court found, *inter alia,* that Gulf Caribbean's negligent actions constituted "an unreasonable deviation, nullifying any limitations and exemptions which Gulf Caribbean might claim under its bill of lading and the Carriage of Goods by Sea Act." For the reasons set forth below we hold no one-year limitation period was applicable to

this action; hence, we need not reach any other issue presented.

The contract governing the transaction at issue is a short-form bill of lading (short bill). Nowhere on the short bill is there any indication of a statute of limitations. The short bill, however, incorporates two pertinent documents: one is the long-form bill of lading (long bill) on file with the Federal Maritime Commission ("FMC"), the other is the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1300 et seq.

The short bill states "[t]his bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 26, 1936." COGSA does impose a one year statute of limitations. *See* 46 U.S.C. § 1303(6) (suit must be brought within one year after date of delivery or date delivery should have occurred). COGSA also contains § 1311, however, which reads:

> Nothing in this chapter shall be construed as superseding any part of sections 190 to 196 of this title [the Harter Act], or of any other law which would be applicable in the absence of this chapter, insofar as they relate to the duties, responsibilities, and liabilities of the ship or carrier prior to the time when the goods are loaded on or after the time they are discharged from the ship.

The short bill here at issue incorporates *all* of COGSA. *Compare Ralston Purina Co. v. Barge Juneau and Gulf Caribbean Marine Lines, Inc.,* 619 F.2d 374 (5th Cir.1980). Therefore, the short bill includes § 1311, which states COGSA will not supersede the Harter Act, 46 U.S.C. §§ 190–196, for liabilities arising "prior to the time when the goods are loaded ...." Because the damage here undeniably occurred prior to the time the goods were loaded, the Harter Act, and not COGSA, controls. Appellant's argument based on COGSA's one year statute of limitation therefore fails.[3]

**2.** *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (Eleventh Circuit bound by former Fifth Circuit decisions).

**3.** The Harter Act, incidentally, does not incorporate a statute of limitations. *See PPG Indus-*

The short bill is also subject to a long-form bill of lading:

> This bill of lading is issued and the goods covered hereby are subject to, and all parties to this contract are bound by the terms, provisions, stipulations and conditions stated in the company's regular long form bill of lading on file with the Federal Maritime Commission, and open for shipper's inspection at the company's offices, and with which the shipper hereunder is understood to be familiar, which terms, provisions, stipulations and conditions of said long form bill of lading are hereby incorporated by reference in this short form bill of lading with the same force and effect for all purposes as if the same were severally, fully and specifically set forth herein.

The long bill provides suit must be brought within one year of delivery of the goods. Gulf Caribbean thus argues that Allstate is bound by this limitation clause in the long bill. We disagree.

First, Gulf Caribbean's cases notwithstanding, the entire bill of lading does not take the force of law because it is filed with the Federal Maritime Commission. Only the required tariff has this effect. *See Gilbert Imported Hardwoods, Inc. v. 245 Packages of Guatambu Squares, More or Less,* 508 F.2d 1116, 1120–21 (5th Cir.1975) (*tariff* filed with FMC has force of law); *State of Israel v. Metropolitan Dade County, Florida,* 431 F.2d 925, 928 (5th Cir.1970) (*tariff* filed with appropriate regulatory agency has force of law). Every clause in every bill of lading filed with the FMC cannot have the force and effect of law, particularly when clauses frequently inserted in filed bills of lading have been struck as violative of public policy or existing statutes. *See Encyclopedia Britannica, Inc. v. SS Hong Kong Producer,* 422 F.2d 7, 12 (2d Cir.1969) (certain clauses in bills of lading violate COGSA; COGSA prevails). *Marvirazon Compania Naviera, S.A. v. H.J. Baker*

*& Brothers, Inc.,* 674 F.2d 364, 366 (5th Cir.1982) is on point and we find it persuasive:

> The limitation of liability provisions in the tariff, under which A & G brings this appeal, were not related to rates or charges and therefore were not required by law to be within the tariff.... Knowledge of the limitation clause cannot be imputed to Marvirazon simply by filing the tariff with the Federal Trade Commission, because it is not required by law to be in the tariff.

*Id.* at n. 1, n. 2 (citation omitted).

Second, we are reluctant to give effect to limiting clauses with which "a carrier could shield itself from liability through manipulation of fine print clauses contained in standardized contract forms." *Calmaquip Engineering West Hemisphere Corporation v. West Coast Carriers Ltd.,* 650 F.2d 633, 639–40 (5th Cir. Unit B 1981) *citing Encyclopedia Britannica, supra* at 14. In this regard we follow the Second Circuit's decision in *Encyclopedia Britannica, supra;* we will not limit the period within which Allstate could bring suit when that limit was expressed in fine print in a document never specifically brought to Allstate or Alumax' attention, and when neither Allstate nor Alumax had actual knowledge of its terms. *Id.* at 14.[4] This is particularly so where the limitation arguably conflicts with the absence of a specific limitations period under the Harter Act. *See supra* (discussion of COGSA exception). We permit the suit, and AFFIRM.

---

tries, Inc. v. Ashland Oil Company-Thomas Petroleum Transit Division, 527 F.2d 502, 505 (3d Cir.1975).

4. It is hard to say even International had knowledge actual or constructive, inasmuch as the district court found International received the bills of lading *after* the ISLA DEL SOL sailed.