**Julio Sanchez VEGAS, Felix Rodriguez Tirado, and Ivan Varela Delgado, d/b/a Asesoria Juridica y Mercantil, As assignees/subrogees, Plaintiffs-Appellees,**

v.

**COMPANIA ANONIMA VENEZOLANA DE NAVEGACION, d/b/a Venezuelan Lines, Defendant-Appellant.**

No. 81–6222.

United States Court of Appeals, Eleventh Circuit.

Nov. 28, 1983.

Allan R. Kelley, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, Fla., for defendant-appellant.

Armstrong & Mejer, Alvaro L. Mejer, Coral Gables, Fla., for plaintiffs-appellees.

Before VANCE and ANDERSON, Circuit Judges, and JONES, Senior Circuit Judge.

PER CURIAM:

Parker Hannifin Corporation shipped one hundred and nine cartons of automobile brake parts in two master cartons built on pallets. The palletized cartons were delivered to Venezuelan Line which issued a bill of lading containing columns for "No. of Pkgs." and for a description of the cargo shipped. In the "No. of Pkgs." column, the shipper wrote "2." In the column headed "Shipper's Description of Packages and Goods" the shipper entered "Palletized mas-ter cartons, STC [said to contain]: 109 cartons: auto brake parts." The shipment did not reach its destination. Appellees, as assignees of the consignee's insurer, brought this subrogation action to recover $7,667.20, the value of the lost cargo. The carrier admitted liability but asserted as a defense the provisions of the Carriage of Goods by Sea Act [COGSA], 46 U.S.C. § 1304(5), which sets maximum carrier liability at five hundred dollars per package.

The facts were stipulated and the only contested issue was whether the five hundred dollar package limitation applied to the two palletized cartons or to the one hundred nine cartons contained therein. The district court held that the five hundred dollar limitation applied to each of the one hundred and nine cartons and not to the two master cartons which contained them. This decision is challenged on appeal.

The COGSA limitation was enacted by Congress in 1936 to restrain the superior bargaining power wielded by carriers over shippers. Its purpose was to set a reasonable limitation on liability which carriers by law could not reduce by contract. *Allstate Insurance Co. v. Inversiones Navieras Imparca*, 646 F.2d 169, 171 (5th Cir. Unit B 1981).

In *Allstate* we held that if a shipper places its packages of goods in a container furnished by the carrier and discloses the number of packages in the container to the carrier in the bill of lading or otherwise, each package or unit within the container constitutes one package for purposes of COGSA's five hundred dollar limitation of liability. *Id.* at 172. In this case a container was not utilized but the shipper consolidated its packages into two palletized master cartons. *Allstate* must control unless there exists a significant distinction between palletized master cartons and containers for purposes of the COGSA limitation. Under present facts we hold that no such distinction exists and therefore we affirm the judgment of the district court.

Two factors significantly influence our decision. First, in *Allstate* we followed the second circuit's decision in *Mitsui & Co. v. American Export Lines, Inc.,* 636 F.2d 807 (2d Cir.1981). In that case the court opined that the goal of international uniformity would be better served if the COGSA provisions were construed in harmony with the 1968 Brussels Protocol to which the United States is a party. The effect of the protocol was described in *Mitsui* as follows:

> Where a container, pallet or similar "article of transport" is used to consolidate goods, the number of packages or units enumerated in the bill of lading as packed in such articles of transport shall be deemed to be the number of packages or units; if, on the other hand, the bill of lading does not show how many separate packages there are, then each "article of transport" shall be deemed a package or unit.

*Id.* at 821. We take as significant the protocol's interchangeable use of the words "container, pallet or similar 'article of transport.'" Looking solely to this provision of the protocol we perceive no basis for any reasoned distinction between a container filled with individual listed packages or cartons and a palletized master carton similarly filled.

Second, we think that our conclusion is the more reasonable application of the limitation measured by the words "per package." As the *Mitsui* court pointed out, COGSA ascribes no specialized or technical meaning to the word "package." *Id.* at 614. We must assume that Congress intended to vest the word with its plain, ordinary meaning. In the words of the *Mitsui* court:

> The dictionary definitions of "package," though alone insufficient, provide at least a starting point in this inquiry. Webster's Third New International Dictionary 1617 (1966) defines a package as follows: "a small or moderate sized pack: bundle, parcel ... a commodity in its container ... a covering wrapper or container ... a protective unit for storing or shipping a commodity." The word "package" is defined in Black's Law Dictionary 1262 (rev. 4th ed. 1968) as: "a bundle put

> up for transportation or commercial handling; a thing in form to become, as such, an article of merchandise or delivery from hand to hand .... As ordinarily understood in the commercial world, it means a shipping package."

*Id.* (quoting *Hartford Fire Insurance Co. v. Pacific Far East Line, Inc.,* 491 F.2d 960, 963 (9th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974)). It is apparent to us that both the individual and the master cartons could fit within these definitions. Given the congressional purpose to limit agreements restricting carriers' liability, however, we doubt justification exists for restricting liability on the basis of consolidation into master cartons of packages to each of which, except for such consolidation, the five hundred dollar limitation would apply.

AFFIRMED.