**INTER–OCEAN (FREE ZONE), INC. f/u/b/o Certain Underwriters at Lloyd's, London, Plaintiffs,**

v.

**MANAURE LINES, INC., "MANANA V", in rem, Strachan Shipping Company, Inc., and Metropolitan Dade County Seaport Department, Defendants.**

No. 83–1597–Civ–Aronovitz.

United States District Court,
S.D. Florida,
Miami Division.

April 18, 1985.

Steven E. Goldman, Standard, Weisberg, Heckerling & Rosow, P.C., New York City, for plaintiff Inter-Ocean (Free Zone), Inc. Certain Underwriters at Lloyd's, London.

David R. Canning, Mitchell, Harris, Canning & Murray, Miami, Fla., for Strachan Shipping Co., Inc.

James A. Jurkowski, Asst. County Atty., Miami, Fla., for Metropolitan Dade County Seaport Dept.

## MEMORANDUM OPINION GRANTING PLAINTIFF'S AND DENYING DEFENDANT STRACHAN'S CROSS MOTIONS FOR SUMMARY JUDGMENT

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon the parties' various cross motions for summary judgment. These motions include:

1. Plaintiff's Motion for Summary Judgment on Liability (D.N. 61);

2. Defendant STRACHAN's Motion for Partial Summary Judgment on Liability (D.N. 71);

3. Plaintiff's Cross Motion for Summary Judgment as to Value (D.N. 72) and;

4. Defendant STRACHAN's Cross Motion for Summary Judgment on Liability (D.N. 87).

The Court held a hearing regarding these motions and the issues raised therein on November 26, 1984. Counsel for all parties appeared and presented their views on all issues. Thereafter, the Court invited counsel for all parties to submit supplemental memoranda addressing certain issues raised at the hearing. The parties filed such supplemental memoranda. The Court has heard the argument of counsel and has carefully considered and reviewed the various motions, the supporting, opposing and supplemental memoranda filed thereto, the pertinent portions of the record, the applicable law and being otherwise fully advised in the premises, it is thereupon

ORDERED AND ADJUDGED as follows:

1. Plaintiff's Motion for Summary Judgment on Liability (D.N. 61) be, and the same is, hereby GRANTED for the reasons set forth hereinbelow.

2. Defendant STRACHAN's Motion for Partial Summary Judgment on Liability (D.N. 71) be, and the same is, hereby DENIED for the reasons set forth hereinbelow.

3. Plaintiff's Cross Motion for Summary Judgment as to Value (D.N. 72) be, and the same is, hereby GRANTED for the reasons set forth hereinbelow.

4. Defendant STRACHAN's Cross Motion for Summary Judgment on Liability (D.N. 87) be, and the same is, hereby DENIED for the reasons set forth hereinbelow.

## Background

This is a case in which Plaintiff INTER–OCEAN (FREE ZONE), INC. f/u/b/o CERTAIN UNDERWRITERS at LLOYD'S, LONDON ("INTEROCEAN") seeks damages of $144,656.00 for the unexplained loss or disappearance of a containerized cargo consisting of 600 color television sets and eleven cartons of audio tapes which were to be carried by sea on the Manaure Lines Inc. vessel "MANANA V" from the Port of Miami to LaGuaira, Venezuela, in June of 1982. The container and its full contents were safely delivered by Plaintiff's trucker into the possession and custody of the ocean carrier's stevedore, Defendant STRACHAN SHIPPING COMPANY, INC. ("STRACHAN"), at the Port of Miami. However, subsequent to the container's delivery, when one of STRACHAN's employees was dispatched to retrieve the container and load it aboard the ship, the container and its contents were discovered to be missing from the STRACHAN lot.

After the close of discovery, and after the submission of a Joint Pretrial Stipulation, Plaintiff INTER–OCEAN and Defendant STRACHAN agreed that the cause was appropriate for disposition by cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court agrees and finds that there are no genuine issues of material fact remaining in dispute. Accordingly, the Court awards summary judgment to Plaintiff both as to Defendant STRACHAN's liability and the stated quantum of damages.

The material facts showing that Plaintiff is entitled to summary judgment on both the issues of liability and damages are contained in the Joint Pretrial Stipulation, STRACHAN's answers to interrogatories, the depositions of Defendant's South Florida Operations Manager, John Williams and its Manager of Stevedoring Operations, Mats Erlandson, and in the documents appended by Plaintiff to its summary judgment motions. These documents include Defendant STRACHAN's Dock Receipt Number 41691, Port of Miami Seaport

Scale Receipt Number 075514, Manaure Lines' Bill of Lading, the deposition testimony of Plaintiff's vice president and the commercial invoice for Plaintiff's cargo.

### The Issue of Liability

■ It is clear from an examination of the following undisputed facts that entry of summary judgment for Plaintiff on the issue of liability is mandated. After having been loaded at Plaintiff's warehouse in Miami, Container Number XSRZ694013 was transported by truck to the Port of Miami on June 30, 1982. The cargo was booked to go aboard Manaure Lines' vessel the "MANANA V" and was therefore delivered by Plaintiff's trucker to that carrier's stevedore at the Port of Miami in June of 1982.

Prior to the container's arrival, a Manaure Line bill of lading had been issued for the cargo, which described it in the following terms:

40' HOUSE TO HOUSE TRAILER S.T.C. 611 ctns "ELECTRONIC EQUIPMENT."

Arriving at the entrance to the Port of Miami at approximately 12:30 p.m., Plaintiff's trucker stopped at the gatehouse or checkpoint on Dodge Island which is maintained by the Metropolitan Dade County Seaport Department and which is staffed by the Seaport Department's security personnel. In accordance with the Port of Miami's security procedures, Plaintiff's trucker duly presented its bill of lading, obtained a gate pass and proceeded on to have the container weighed at the seaport scale which is the property of and maintained by the Seaport Department.

At the seaport scale, Plaintiff's trucker had the container weighed and, as evidenced by the weight certificate, the official weight of the container was 50,200 pounds. The time noted on the weight certificate was 1:12 p.m.

The fully loaded container was then delivered to the possession of STRACHAN at the entrance to its yard or facility located on Lummus Island, Port of Miami. Receiving and delivery clerks who are members of the International Longshoreman's Association ("ILA"), were employed by STRACHAN to accept delivery of such containerized cargo preparatory to being loaded aboard ship. One of these receiving and delivery clerks furnished a STRACHAN receipt (also referred to as a trailer interchange report) to Plaintiff's trucker, who thereupon parked the container at a spot designated on the face of the dock receipt as space E–32, unhitched the container and drove off both Lummus Island and Dodge Island, and away from the Port of Miami.

When Plaintiff's trucker drove away, the fully loaded container was left in the possession of Defendant STRACHAN. Sometime later on that same afternoon of June 30, 1982, STRACHAN attempted to retrieve Plaintiff's container for loading aboard the "MANANA V", but neither the container nor its contents were anywhere to be found. Several days later, the empty container was found in downtown Miami, but Plaintiff's cargo was never found or accounted for.

There was no evidence in the record, either documentary or from a witness, showing an authorized removal of the container. There is ample circumstantial evidence in the record indicating that a theft occurred, among other bases for Plaintiff's asserted claims and legal grounds for recovery as hereinafter noted. STRACHAN has admitted that it is not in possession of a pick-up order (or trucker's bill of lading) showing an authorized removal of the container and Metropolitan Dade County's Port Security has no copy of the type of authorized gate pass which is normally required in order for a truck to be allowed to exit from the Port of Miami when hooked up to a container.

Counsel for STRACHAN has, however, maintained that there existed a conspiracy to steal Plaintiff's container from Defendant's cargo depot, and has maintained that the Federal Bureau of Investigation in Miami is conducting an investigation into this occurrence. Counsel for STRACHAN has further contended that the FBI is in possession of a forged gate pass and may have

narrowed its suspicions to center upon a past employee of the Seaport's Security Department. However, no document or affidavit of any kind has been produced by counsel for Defendant STRACHAN.

In June of 1982, the area on Lummus Island which STRACHAN held pursuant to a lease from Dade County was fenced on three of its four sides with the side facing the water (Biscayne Bay) left unfenced and unprotected against authorized persons seeking to gain entry to Defendant's container depot. Defendant's Manager of Stevedoring Operations, Mats Erlandson testified that, to his knowledge, no other stevedore operating at the Port of Miami as of June 1982 had neglected to install fencing on all four sides of their respective leased premises.

Moreover, while STRACHAN did maintain a gate capable of being closed and locked at the front entrance to its Lummus Island depot, it was STRACHAN's practice to keep this gate wide open during the course of normal daytime business hours, with no security guard posted at the gate. While the ILA receiving and delivery clerks were supposed to be on duty at this main gate, neither they nor any other STRACHAN personnel kept a log of incoming or outgoing containers.

These same ILA receiving and delivery clerks were not employed for purposes of providing security or protection against theft of containerized cargo kept at Defendant's depot, although STRACHAN's South Florida Operations Manager, John Williams did testify at his deposition that these receiving and delivery clerks would be obligated to at least telephone port security in the event that they were to observe someone attempting to remove cargo from the depot without authorization. There is no evidence that any such telephone call was made in this case.

Mr. Williams also testified that, other than these receiving and delivery clerks, STRACHAN itself furnished no security during daylight business hours for containerized cargo at its Lummus Island depot, and that under such procedures as existed on June 30, 1982, it would have been possible for some unauthorized person such as a thief to enter the depot, hook up to a container, and drive out through the open main gate without any interference by these receiving and delivery clerks or from anyone else employed by STRACHAN. In essence, Defendant STRACHAN took no steps to furnish protection against theft to cargo and instead took the position that security at the Port of Miami was solely and exclusively the province and responsibility of the Seaport Security Department of Metropolitan Dade County.

In April of 1982, sometime between the 22nd and the 27th, just two months prior to the instant loss, another container filled with cargo was stolen or mysteriously disappeared from STRACHAN's possession at precisely the same Lummus Island cargo depot. No security guard was at STRACHAN's depot during the daylight hours either prior to or subsequent to the April 22–27 loss. As stated hereinbefore, no daylight security guards were present at the time of Plaintiff's loss some two months later.

Manager of Stevedoring Operations Erlandson testified at his deposition that STRACHAN was "concerned that not everything had been done to avoid theft and we felt it our duty to prevent theft." (Deposition of Erlandson at p. 41). Erlandson thereupon revealed that he and two other officers of STRACHAN had "on several occasions discussed whether we even should have to provide security at the port apart from this which was provided by the Seaport Security Department." (Deposition of Erlandson at p. 66).

At least one of these discussions concerning security took place prior to June 30, 1982. Erlandson further testified that these discussions concerned whether or not STRACHAN should provide security guards at their Lummus Island depot during the daylight hours (Deposition of Erlandson at pp. 70–81), and he himself confirmed in his deposition testimony that he "considered the security provided inade-

quate for the Port of Miami." (Deposition of Erlandson at p. 81). In his own words:

I believe that I said I considered the security provided by the Seaport Security Department was not totally adequate to protect the cargo and other property in the Port of Miami.

(Deposition of Erlandson at p. 81). Thus, the facts on the record in these summary judgment motions illustrate that Defendant STRACHAN knew or should have known of the existence of a theft or security problem at its Lummus Island depot, at least during those daylight business hours when its practice was to maintain an open and unguarded front gate.

Defendant STRACHAN has maintained that it was acting at all times as a disclosed agent for its principal Manaure Line, and as such can have no independent liability to Plaintiff. This argument is not persuasive. A person who acts as an acknowledged agent for a disclosed principal is independently liable for his own acts of negligence, despite the fact that these acts are committed in the course and scope of the agency and in furtherance of the disclosed principal's business. *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 359 U.S. 297, 302, 79 S.Ct. 766, 769, 3 L.Ed.2d 820 (1959). Thus, Defendant STRACHAN would be fully liable to Plaintiff, regardless of any potential or actual status as a mere agent for the ocean carrier Manaure, in the event that Defendant is shown to have been negligent.

In the case of *Leather's Best, Inc. v. S/S "MORMACLYNX"*, 451 F.2d 800 (2d Cir. 1971), *on remand* 346 F.Supp. 962 (S.D.N.Y.1972), a shipper sought recovery for its cargo loss from both the carrier and the carrier's stevedore. The latter took the position, much as STRACHAN has done in the instant case, that it acted merely as agent for the carrier and hence was protected from liability to the plaintiff for any contractual breach. The appellate court noted that a stevedore which takes custody of a shipper's cargo occupies a dual role—that of agent for the ocean carrier and "as bailee of the container." 451 F.2d at 808.

The court stated that there is no doubt that a stevedore acting as agent for a disclosed principal could not be held liable *ex contractu* for a breach even where the breach was a result of its (i.e., the agent's) own wrongful act." *Id.*

However, it is equally without doubt that a shipper such as Plaintiff in the instant action can state a valid claim against the stevedore or terminal operator such as STRACHAN for damages which are due to the stevedore's or terminal operator's own independent tortious conduct. *Leather's Best, supra.* Such a claim is pendent to the maritime claim set forth against the carrier, and issues of stevedore liability pursuant to this pendent claim for the stevedore's own independent acts of negligence are to be determined by reference to state law. *Leather's Best, supra* at 808. *Accord: Robert C. Herd & Co., supra,* (wherein the Supreme Court stated that "an agent, because he is agent, does not cease to be answerable for his acts." 359 U.S. at 304, 79 S.Ct. at 770. This decision also stated that "the liability of an agent for his own negligence has long been embedded in the law ... (and) withdrawal of the right to sue the agent for his torts would result ... in substantial dilution of the rights of claimants." *Id.*)

Upon the issuance of its dock receipt (or trailer interchange report), and its acceptance of custody of Plaintiff's cargo, Defendant STRACHAN became a bailee as to that cargo. The case law supporting this proposition is overwhelming. *See, Colgate-Palmolive Co. v. S/S DART CANADA,* 724 F.2d 313, 1984 A.M.C. 305 (2d Cir.1983); *Phillip Bros. Metal Corp. v. S/S RIO IGUAZU,* 658 F.2d 30, 1981 A.M.C. 854 (5th Cir.1980); *ITT Rayonier v. Southeastern Maritime Co.,* 620 F.2d 512, 1981 A.M.C. 854 (5th Cir.1980); *LaSalle Machine Tool, Inc. v. Maher Terminals, Inc.,* 611 F.2d 56, 1980 A.M.C. 1187 (4th Cir.1979).

It is thus clear that Defendant STRACHAN was a bailee of Plaintiff's cargo from the moment that it took possession thereof, pursuant to its issuance of a dock

receipt to Plaintiff's trucker. All of the traditional elements of the bailment set forth in familiar case law are in evidence in the instant case and the facts are not in dispute. *See, Puritan Insurance Company v. Butler Aviation*, 715 F.2d 502, 505 (11th Cir.1983).

In this regard, Defendant STRACHAN maintains that it exercised due care for the safety of Plaintiff's cargo and therefore cannot be held liable as a bailee for what it insists was a conspiracy to steal Plaintiff's container. The issue of STRACHAN's liability as a bailee is to be determined by reference to the law of the State of Florida. *Leather's Best, supra*, 451 F.2d at 813. A provision from the Uniform Commercial Code, Florida Statute Section 677.403(1)(b), is the codified law on bailment in Florida. That subsection provides that a "bailee must deliver the goods" to the bailor, unless and to the extent that the bailee can establish:

> Damage to or delay, loss or destruction of the goods for which the bailee is not liable, but the burden of establishing negligence in such cases when value of such damage, delay, loss, or destruction exceeds $10,000 is on the person [who owns the goods (i.e., the bailor)].

As this language indicates, Florida's version of the Uniform Commercial Code provision places the ultimate burden of proof upon the owner of the bailed goods. *E.S.I. Meats, Inc. v. Gulf Terminal Co.*, 639 F.2d 1348 (5th Cir.1981), quoting, 9 Wigmore on Evidence § 2485 at p. 272. Therefore, in cases like the one at bar wherein damages exceed $10,000, Plaintiff INTER–OCEAN must establish its *prima facie* case against the bailee STRACHAN by showing delivery of the goods to the bailee and the latter's failure to redeliver the goods in like quantity and condition. This is Plaintiff's initial burden of proof under Florida's law of bailment.

The burden then shifts to the bailee to come forward with some evidence to explain the circumstances of the loss of the bailed goods. The explanation proffered by the bailee must be supported by suffi-cient evidence and cannot be merely the product of speculation and conjecture. It is not enough to show that the bailee used reasonable care if "mysterious disappearance" is the only explanation given. *See, E.S.I. Meats, supra*, and *J. Aron & Company, Inc. v. Service Transportation Co.*, 486 F.Supp. 1070 (Md.1980). If the bailee fails to provide a sufficient explanation supported by evidence, then he will be liable for breach of bailment and negligence. Only after the bailee has offered proof of the circumstances of the loss, or has come forward with some evidence of some intervening cause, such as theft, which is sufficient to legally excuse non-delivery, must the plaintiff go forward with affirmative evidence of the defendant-bailee's negligence. *Lonray, supra*, at 194.

In this case, Defendant STRACHAN has offered no record evidence sufficient to enable this Court to determine how the loss occurred. Defendant has maintained that a conspiracy existed to steal Plaintiff's cargo from the Lummus Island container depot, but Defendant has failed to come forward with any evidence in support of this theory. The only evidence offered has been unsupported statements by Defendant's counsel and unless an attorney has first hand knowledge, it is clear that no insistence on his part, not even his affidavit, can have probative force in a motion for summary judgment. *See, Denby v. Seaboard World Airlines, Inc.*, 575 F.Supp. 1134 (S.D.N.Y.1983). Summary judgment may therefore be granted in this case based simply upon Plaintiff's proof of its *prima facie* case showing the delivery of the full container to Defendant, as evidenced by the Dade County weight certificate and Defendant STRACHAN's complete inability to account for or explain other than by "mysterious disappearance" the reasons for its inability to return or account for the container.

However, although there is ample circumstantial evidence establishing a presumption of theft, there is also ample uncontested evidence of a shocking degree of negligence with respect to protecting Plain-

tiff's cargo against a foreseeable risk of its theft. Summary judgment in favor of Plaintiff therefore is awarded for the additional reason that Defendant STRACHAN failed to exercise reasonable care for the safety of Plaintiff's property in its possession, resulting in the theft of that property.

In the *Leather's Best* case, for example, on remand, the District Court concluded that a breakdown in the stevedore's security precautions was the most likely explanation for the loss of Plaintiff's container. In other words, the container was probably stolen while the security personnel were away from or not attending to their duties. This was held to constitute negligence sufficient to impose liability upon the stevedore as a bailee. 346 F.Supp. 962 (S.D.N.Y.1972). This Court similarly concludes that the simplest explanation in the instant case is that STRACHAN's ILA receiving and delivery clerks were simply not attending to their duties at the depot, and that no member of this work force took any action to prevent some unknown, unseen thief from driving away with Plaintiff's container.

Additionally, even had there not been a prior loss of a container from STRACHAN's depot under similar circumstances to place Defendant on notice of the existence of a perilous state of affairs requiring the institution of cautionary measures, and even had Defendant's corporate personnel not conferred together and discussed their recognition of the problem, there would still be sufficient evidence of negligence to award summary judgment to Plaintiff. Defendant's failure to maintain any control over access to its premises, by neglecting to fence all four sides of its depot and by neglecting to maintain any security at the front gate which was routinely kept "wide open" (Deposition of Erlandson at p. 31), constitutes shocking evidence of negligence.

However, together with the prior loss of a full container at the end of April 1982, and the admission on the part of Mr. Erlandson that he himself believed security against theft during daylight hours was inadequate, Defendant's negligence and liability for Plaintiff's cargo becomes indisputable. STRACHAN knew that it had a security problem at its Lummus Island depot, yet it neglected to take any steps to protect the property of innocent bailors such as Plaintiff who might unwittingly place its cargo into Defendant's uncaring custody.

*See,* McCormack on Evidence (2nd Ed. 1972) § 200. Defendant is therefore liable on summary judgment, as a negligent bailee, for the theft of Plaintiff's cargo.

### The Issue of Damages

Concerning the respective motions for summary judgment as to damages, the Court awards summary judgment to Plaintiff in the amount of $144,656 as evidenced by the commercial invoice covering this shipment of goods. Defendant STRACHAN maintains that if it is held liable for any negligence proximately causing the loss of Plaintiff's cargo, it is nonetheless entitled to limit its liability under the "Himilaya clause" of carrier Manaure's bill of lading extending to the carrier's stevedore the statutory privilege of the Carriage of Goods by Sea Act's $500 package limitation. 46 U.S.C. § 1304(5). Defendant STRACHAN also contends that its Port of Miami freight handlers tariff provides for a valid limitation of its liability to $500 per package. As to Defendant's first contention, the single ocean container in the instant case cannot be deemed to constitute a single COGSA package, for the same reasons set forth in the case of *Allstate Insurance Co. v. Inversiones Navieras Imparca,* 646 F.2d 169 (5th Cir.1981), as well as the more recent Eleventh Circuit case of *Vegas v. Compania Anonima Venezolana de Navegacion,* 720 F.2d 629 (11th Cir. 1983). *See also, Croft & Scully Co. v. M/V SKULPTOR VUCHETICH,* 664 F.2d 1277 (5th Cir.1982).

 The bill of lading in this case sufficiently described the contents of the container, in virtually the exact same fashion as did the bill of lading in the *Allstate* case. In the space in the Manaure bill of lading

set aside for a description of goods, the cargo was described as 611 separate cartons of electronics goods and each of these must be held to constitute a single COGSA package.

■ Defendant's reliance upon its Port of Miami freight handlers tariff is equally unavailing in its effort at limiting its liability. Defendant attempts to rely upon the limitation of liability clause contained on Page 8 at Paragraph 10. That provision states in pertinent part:

Liability for damage, if incurred as a result of proven negligence by the Freight Handler during handling, loading or unloading of cargo shall not exceed $500.00 per package.

... A loaded container or loaded trailer will be considered as a single unit.

There are several reasons why Defendant's reliance on this provision is erroneous under the instant facts. To begin with, the limitation of liability clause is expressly limited to liability for negligence. The clause does not cover breach of bailment claims. Moreover, the tariff is not mandated by statute and does not have the force and effect of binding law on Plaintiff. Rather, it appears to the Court that the "tariff" is merely an executed agreement amongst eight stevedore and terminal operations collectively known as the Port of Miami Freight Handlers. Although the tariff is filed with the Federal Maritime Commission, it is not a statutorily required tariff. Further, it seems as though the agreement seeks to impose certain obligations on future customers of the freight handlers who are not even parties to the agreement. It is this Court's opinion that the "tariff" at bar does not constitute binding law. This conclusion is borne out by the language of the agreement on Page 1 wherein the scope of the tariff is delimited:

Rates, rules, and regulations for cargo handling and other port terminal services rendered in the Port of Miami, Florida, and in connection with a common carrier by water in the foreign commerce of the United States or in interstate commerce on the high seas.

Tariffs (Current), Revisions, Rates, Rules, and Regulations governing Port facilities in the Port of Miami, will apply in addition to the charges stated herein.

This language does not encompass the future customers as potentially binding parties to the tariff. Further, the "tariff" itself does not indicate that future customers such as Plaintiff are to be automatically charged by the terms and provisions therein as they might be pursuant to a tariff that is required by law to be filed with the Federal Maritime Commission.

■ Finally, Defendant cannot rely upon the limitation of liability clause because it is well established that one seeking to rely upon a limitation or exculpatory provision such as the one which STRACHAN has presented must prove that Plaintiff had actual knowledge or notice of the provision and its applicability. *See, LaSalle Machine Tool, Inc. v. Maher Terminals, Inc., supra.* Nor can Defendant successfully maintain that the mere filing of the tariff gives constructive notice to the limitation of liability provision contained since it is equally well established that the filing of a tariff gives constructive notice only of those terms which are required by law to be filed. *See, Federal Commerce & Navigation Co., Ltd. v. Calumet Harbor Terminals, Inc.,* 542 F.2d 437 (7th Cir. 1976).

Since Plaintiff's vice president testified at his deposition that he was not actually aware of the limitation of liability provision contained in the freight handlers tariff and since there is no legal requirement imposing upon Defendant STRACHAN, the necessity for filing such a limitation provision in its tariff, the freight handlers tariff provision relied upon by STRACHAN cannot be utilized for limiting its liability.

Defendant maintains that Plaintiff should be charged as if it had actual notice because the Dock Receipt whereby STRACHAN took possession and INTEROCEAN relinquished control of the subject cargo states: "shipper agrees to all terms and conditions of the tariff governing storage at this facility." Defendant maintains that

this provision binds Plaintiff to the limitation of liability clause in the tariff amongst the Port of Miami Freight Handlers. This argument, like all of Defendant's other arguments must fail under the applicable caselaw. A similar situation was confronted by this Court and subsequently by the Eleventh Circuit in *Allstate Insurance Company v. International Shipping Corp.*, 703 F.2d 497 (11th Cir.1983) ("Allstate"). There, the Eleventh Circuit held that a one year limitations period as provided for under a long form Bill of Lading was not binding on the parties because it was not actually brought to the contracting parties' attention. The *Allstate* case involved a short form bill of lading, which much like the Dock Receipt at bar incorporated by reference the terms and conditions of another longer document. The Allstate short form Bill of Lading provided: "This bill of lading is issued and the goods covered hereby are subject to, and all parties to this contract are bound by the terms, provisions, stipulations and conditions stated in the company's regular long form bill of lading ..." 703 F.2d at 500. The long form bill of lading specifically provided that suit must have been brought within one year of delivery of the subject goods. The Eleventh Circuit held that since no actual notice of this provision could be established, the limitations period could not be applied and the suit was properly instituted despite the fact that it had been filed after one year from the delivery of the goods in question. In *Allstate*, the longer document was a long form Bill of Lading and in the case at bar, the longer document was the Port of Miami Freight Handlers tariff. The rationale employed by the Eleventh Circuit is applicable to the case at bar. The *Allstate* Court stated:

> (W)e are reluctant to give effect to limiting clauses with which a carrier could shield itself from manipulation of fine print clauses contained in standardized contract forms ... In this regard, we follow the Second Circuit's decision in Encyclopedia Brittanica; we will not limit the period within which Allstate could bring suit when that limit was expressed in fine print in a document never specifically brought to Allstate's or Alumax' attention and when neither Allstate nor Alumax had actual knowledge of its terms.

703 F.2d at 500. The Court finds *Allstate* persuasive in the instant case and cannot hold Plaintiff accountable for the limitation of liability provision when it had no actual knowledge of said limitation.

The Court therefore awards summary judgment to Plaintiff in the full amount of its damages of $144,656, plus interest at the legal rate and costs.