**FIREMAN'S FUND INSURANCE COMPANY, Plaintiff,**

v.

**PANALPINA, INC., Gateway Freight Systems, Inc., and Yareinca Corporation, Defendants.**

**La Meridional Cia. Arg. de Seguros S.A., Plaintiff,**

v.

**Panalpina, Inc., Gateway Freight Systems, Inc., and Yareinca Corporation, Defendants.**

**No. 991698CIV.**

United States District Court, S.D. Florida.

March 6, 2001.

Christian Keedy, Aran, Correa & guarch, Coral Gables, FL, for plaintiff Fireman's Fund Insurance Company.

David Karcher, Underwood, Karcher & Karcher, Miami, FL, for plaintiff La Meridional CIA de Seguros S.A.

Robert Blanck, Blanck & Perry, Miami, FL., for Panalpina, Inc.

Thomas Gorday, Vernis & Bowling, North Miami, FL, for Yareinca Corporation.

### FINDINGS OF FACT & CONCLUSIONS OF LAW

HIGHSMITH, District Judge.

THIS CAUSE came before the Court for a bench trial on February 26, 2001. The issues tried to the Court were limited to Yareinca Corporation's (hereinafter "Yareinca") potential (a) liability and (b) right to contribution for any such liability, resulting from the unexplained loss of a trailer of cargo. Upon due consideration of the pleadings, the live testimony ad-

duced at trail, the deposition testimony admitted at trial,[1] and the exhibits admitted, the Court finds as follows:

## I. FINDINGS OF FACT

1. Yareinca is a Florida corporation, engaged in the business of leasing parking space. Yareinca's primary place of business—its parking lot—is located at 3000 West 84th Street, Hialeah, Florida. The lot is a rectangular shape and is fenced on all sides. There is a single means of ingress and egress to the lot, located off of 84th Street. At the point of ingress and egress there is a gate manned by a security guard, who is responsible for logging in and out all vehicles entering and exiting the lot.

2. Panalpina, Inc. (hereinafter "Panalpina") is a Swiss company, with its American headquarters in New Jersey, engaged in the business of transporting freight internationally.

3. Gateway Freight Systems, Inc. (hereinafter "Gateway") was an interstate trucking company, incorporated under the laws of Florida. Gateway has gone bankrupt.[2]

4. In March of 1998, Panalpina contracted with Gateway for Gateway to deliver two shipments from Panalpina's Chicago, Illinois facility to Panalpina's Miami, Florida facility. Motorola, Inc. (hereinafter "Motorola") had contracted with Panalpina for one of the shipments to be delivered by air to Jaguariuna, Brazil.[3] That cargo consisted of cellular phones. Panalpina issued Motorola four through air way bills for that shipment, which were numbered: (1) 684661; (2) 684697; (3) 684748; and (4) 684641. The other shipment, which consisted of industrial machinery, was sent by L.H. Carbide Corporation (hereinafter "L.H. Carbide") to Buenos Aires, Argentina. L.H. Carbide's shipment was to be transported via air by Panalpina to Argentina, as evidenced by short form bill of lading number 6S695/6P695 issued to L.H. Carbide on March 5, 1998.[4]

1. In its deposition transcript designations filed with the Clerk's Office on March 1, 2001, Yareinca identifies for consideration the deposition of Reinaldo Maiz. The Court ruled at the February 26, 2001 bench trial that Mr. Maiz' deposition would not be considered, as he had testified in open court. Accordingly, the Court has limited its consideration of deposition testimony to the following depositions: (1) Robert Claudell's February 13, 2001 telephonic deposition; (2) Steven Roback's August 30, 2000 deposition; (3) Patricia Litowchak's August 30, 2000 deposition; and (4) Kathee Pass' August 31, 2000 deposition. Each of these deposition will be made part of the record.

2. At the outset of the bench trial held February 26, 2001, counsel for Fireman's Fund Insurance Company and counsel for Panalpina represented to the Court that the bankruptcy court afforded them permission to pursue this action against Gateway, *even if no one appeared to represent Gateway.* On two earlier occasions, the Court denied motions for default judgment against Gateway because of the Bankruptcy Code's automatic stay provisions and the language of the bankruptcy court's orders lifting the stay against Gateway, which conditioned the lifting of the stay upon "the clear understanding that defense litigation will be defended by a liability insurer of Gateway." Based upon the representations of counsel, as officers of the Court, the Court will enter separate default judgments against Gateway and in favor of Fireman's Fund Insurance Company and Panalpina.

3. Motorola and Panalpina agreed that the cargo could be trucked from Chicago to Miami and then flown to Brazil, if Panalpina took certain security measures with regard to the trucking of the cargo.

4. Short form bill of lading number 6S695/6P695 states that L.H. Carbides shipment was to go by *air* to Argentina; however, Kathee Pass, Panalpina's manager of global accounts for the Midwest region, testified that the shipment was to go by *sea* to Argentina. *See* Dep. of Kathee Pass at 57. The Court credits the bill of lading over Ms. Pass' recollection, which came more than two years after the events at issue.

5. Fireman's Fund Insurance Company (hereinafter "Fireman's Fund"), a California Corporation, insured Motorola's shipment; La Meridional Cia Arg S.A. (hereinafter "La Meridional"), an Argentinean company, insured L.H. Carbide's shipment.

6. In Illinois, the two shipments described in paragraph 4 were consolidated for transport to Miami in Gateway trailer number 537573 (hereinafter the "Trailer"). The Gateway truck hauling the Trailer left Chicago for Miami sometime late in the evening Thursday March 12, 1998 or early in the morning Friday March 13, 1998. The Gateway truck hauling the Trailer arrived in Miami early in the morning Sunday March 15, 1998.

7. Once in the Miami area, the driver of the Gateway truck, David Avila, proceeded to the Yareinca parking lot rather than going to Panalpina's Miami facility to drop of the Trailer. (It appears that Mr Avila did not go directly to Panalpina's Miami facility because the facility was closed on Sundays). At 7:20 a.m. on Sunday March 15, 1998, Mr. Avila arrived at the Yareinca lot and arranged to park the Trailer, for a fee of $8.00 per day. At that time, the Trailer was detached from the truck that had hauled it from Chicago to Miami and left at the Yareinca lot.

8. Mr. Avila provided no type of bill of lading for the contents of the Trailer and was issued no receipt for the contents of the Trailer. Yareinca's employees made no inquiries into the contents of the Trailer, and no Yareinca employee was afforded the authority to enter the Trailer or move the Trailer.[5]

9. The next day, another driver, Enrique Perez, returned to pick up the Trailer. At that time, the Trailer could not be located on the Yareinca lot. The Trailer had not previously been logged out of the lot. Due to the unexplained absence of the Trailer, a police report was filed with the Hialeah Police Department (case number 98–11306).

10. The Trailer has never been located, and no arrests have been made.

11. Fireman's Fund compensated Motorola $2,227,783.65 for the loss of Motorola's cargo; La Meridional compensated L.H. Carbide $99,874.00 for the loss of its cargo.

12. This suit followed.[6]

13. Fireman's Fund has settled its claims against Panalpina; La Meridional has settled its claims against Panalpina.

## II. CONCLUSIONS OF LAW

To the extent that the Court's factual findings constitute legal conclusions, they are incorporated into these conclusions of law. To the extent that there are any additional findings of fact in this section, they shall have the same effect as if listed in the findings of fact above.

1. The Court has jurisdiction over this action and the parties to it under both 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity).

2. By satisfying Motorola's claim, Fireman's Fund became subrogated to Motorola for purposes of asserting claims for the loss of Motorola's shipment aboard the Trailer. By satisfying L.H. Carbide's claim, La Meridional became subrogated

---

5. The Court infers these finding from (a) the testimony of Reinaldo Maiz as to Yareinca's standard operating procedures and (b) the absence of evidence disputing that those procedures were followed with respect to the Trailer.

6. Fireman's Fund and La Meridional instituted separate subrogation actions in this Court. The Court consolidated the two cases based upon the common nucleus of facts.

to L.H. Carbide for purposes of asserting claims for the loss of L.H. Carbide's shipment aboard the Trailer.

■ 3. The liability regime established by the Carmack Amendment, 49 U.S.C. § 14706, does not apply to this case, as the interstate ground transportation of the shipments was incidental to international contracts for air carriage.[7] *See Shorts v. United Parcel Serv.*, No. CIV.A. 3:97–CV–0682R., 1999 WL 118791, at *3–*4 (N.D.Tex. Feb.25, 1999) *aff'd*, 204 F.3d 1114 (5th Cir.1999) (table decision); *Williams v. Fed. Express Corp.*, No. CV 99–06252 MMM BQRX, 1999 WL 1276558, at *3 n. 11 (C.D.Cal. Oct.6, 1999).

4. Yareinca's liability must be determined by reference to federal common law.[8] *See Royal Ins. Co. v. Millon Air Cargo*, No. 96–1261–CIV–LENARD Findings of Fact and Conclusions of Law, at 9 (S.D.Fla. Aug. 13, 1997) (Brown, M.J.); *Baloise Ins. Co. Ltd. v. United Airlines, Inc.*, 723 F.Supp. 195, 198 (S.D.N.Y.1989); *see generally Nippon Fire & Marine v. Skyway Freight Sys.*, 235 F.3d 53 (2d Cir. 2000); *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922 (5th Cir.1997).

■ 5. Federal common law recognizes the existence of a bailment relationship when one takes exclusive control of another's cargo. *See generally Highlands Ins. Co. v. Strachan Shipping Co.*, 772 F.2d 1520 (11th Cir.1985); *Dunavant Enters., Inc. v. Strachan Shipping Co.*, 730 F.2d 665 (11th Cir.1984) (per curiam). In

*Thyssen Steel Co. v. M/V Kavo Yerakas*, 50 F.3d 1349 (5th Cir.1995), the Fifth Circuit described the law of bailment as developed by federal courts sitting in admiralty:

> Bailment is the delivery of goods or personal property to the bailee in trust, under an express or implied contract, which requires the bailee to perform the trust and either to redeliver the goods or otherwise dispose of the goods in conformity with the purpose of the trust. Under general admiralty law, bailment does not arise unless delivery to the bailee is complete and he has exclusive possession of the bailed property, even as against the property owner.

*Id.* at 1354–55 (citations omitted).[9] The party seeking to recover against a putative bailee bears the burden of proof on every element necessary to establish a bailment. *See Highlands Ins. Co.*, 772 F.2d at 1521.

■ 6. In the present case, Fireman's Fund, La Meridional, and Panalpina must prove the following facts, by a preponderance of the evidence, in order to recover from Yareinca:

a. that the Trailer's cargo (i.e., Motorola's cellular phones and L.H. Carbide's industrial machinery) were delivered to Yareinca, under an implied or express contract to hold it in trust and redeliver it to Gateway's driver (the agent of Panalpina, Motorola, and L.H. Carbide);

---

7. Moreover, Yareinca is neither a common carrier nor a freight forwarder. *See generally Adelman v. Hub City Los Angeles Terminal, Inc.*, 856 F.Supp. 1544, 1547–48 (N.D.Ala. 1994).

8. Assuming that Florida law were to apply, the Court would still look to federal common law in this case, as Florida case law directs that federal common law be applied to cargo losses such as the one at issue here. *See Aerofloral, Inc. v. Rodricargo Exp. Corp.*, 756

So.2d 234, 235 (Fla.App.2000) ("It is undisputed that the loss occurred [prior to an international shipment by air] at [a] ware house located ... almost a mile from the Miami International Airport.... [F]ederal common law governs the case.").

9. The Court notes that Florida law employs the same standard. *See S & W Air Vac .v Dept. of Revenue*, 697 So.2d 1313, 1315 (Fla. App.1997).

**1344**

b. that Yareinca had exclusive possession of the cargo, even against Gateway's driver (again, the agent of Panalpina, Motorola, and L.H. Carbide); and

c. that Yareinca failed to redeliver the cargo in good condition.

■ 7. Fireman's Fund, La Meridional, and Panalpina have failed to satisfy their burden of establishing that Yareinca received the cargo under a contract to hold it in trust. The evidence established that Yareinca leased a space in which the trailer could be parked. There was no evidence, however, that Yareinca was aware of the existence or presence of the cargo, let alone that it contracted to hold the cargo in trust. "While an acceptance may be implied from the circumstances, *the law will not infer it until there is something to show notice or knowledge of the alleged bailee that the goods are in fact in his possession*." 5 Fla.Jur.2D *Bailments* § 2 (1978) (emphasis supplied). In order for a bailment to exist, "the bailee must have *voluntarily assumed the custody and possession of the property for another*." *Dunavant Enters., Inc.*, 730 F.2d 665 (emphasis supplied) (internal quotation marks omitted). Here, no evidence was adduced from which voluntary acceptance of the cargo by Yareinca could be inferred.[10] Thus, the Court holds, as a matter of law, that Yareinca did not receive the cargo under a contract to hold it in trust. *See id.*

■ 8. Moreover, Fireman's Fund, La Meridional, and Panalpina also failed to meet their burden of proving that Yareinca exercised exclusive control over the cargo. "A bailment does not arise unless there is an actual change of possession or delivery from one individual to another, *resulting in the bailee's exclusive possession of the bailed property, even to the exclusion of the property owner*." *Ferrucci v. Atlantic City Showboat, Inc.*, 51 F.Supp.2d 129, 134 (D.Conn.); *see also U.S. v. $79,000 in Account Number 2168050/6749900 at The Bank of New York*, No. 96 CIV. 3493, 1996 WL 648934, at *6 (S.D.N.Y. Nov.7, 1996) ("In order to constitute sufficient delivery there must be a full transfer, either actual or constructive, of the property to the bailee, so as to exclude the possession of the owner and all other persons, and give to the bailee for the time being the sole custody and control thereof."). No evidence was adduced that Yareinca ever had the authority to exclude the Gateway driver from the trailer while it was parked in the lot. To the contrary, there was testimony, from Yareinca's principal Reinaldo Maiz, that truckers maintained the keys to trailers parked at the Yareinca lot. Under these circumstances, where Yareinca had no access to the cargo and Gateway's driver retained the right to access the cargo, Yareinca lacked the necessary control over the cargo to establish a bailment.

9. Based upon the foregoing analysis, the Court holds that Yareinca was not a

10. Fireman's Fund, La Meridional, and Panalpina rely heavily upon the case of *Inter-Ocean (Free Zone), Inc. v. Manaure Lines, Inc.*, 615 F.Supp. 710 (S.D.Fla.1985), in their effort to establish liability on Yareinca's part for the loss of the cargo. In that case, however, Judge Aronovitz specifically found that the cargo was delivered to the stevedore for loading aboard a vessel. *See id.* at 712, 713. Judge Aronovitz explained: "Upon the issuance of its dock receipt (or trailer interchange report), and its acceptance of custody of

Plaintiff's cargo, [the stevedore] became a bailee as to that cargo." *Id.* at 715. Later, when the stevedore went to retrieve the cargo and load it aboard the vessel, the cargo was missing. *See id.* at 713. Under those circumstances, Judge Aronovitz found the stevedore liable because it offered no evidence to explain the loss. *See id.* at 716716–17. *Inter-Ocean (Free Zone), Inc.* is inapposite to the instant case because Yareinca never voluntarily took custody of the cargo and, thus, never became a bailee.

bailee of the cargo contained in the Trailer. Therefore, there is no basis to impose liability upon Yareinca for the loss of that cargo.

## III. CONCLUSION

"There is a distinction ... between what is essentially a mere lease and a bailment." *Commercial Union Ins. Co. v. Bohemia River Assocs., Ltd.,* 855 F.Supp. 802, 805 (D.Md.1991). In the present case, Yareinca simply leased a spot in its lot; Yareinca did not voluntarily accept possession of the cargo contained in the Trailer, under a contract to hold the cargo in trust. Fireman's Fund, La Meridional, and Panalpina's claims against Yareinca, therefore, fail as a matter of law. Pursuant to Rule 58 of the Federal Rules of Civil Procedure, a separate final judgment will be entered in Yareinca's favor and against Fireman's Fund, La Meridional, and Panalpina.