The TRAVELERS INDEMNITY
CO., Plaintiff,

v.

M.S. KISO MARU, her engines, boilers, etc., and against Nippon Yusen Kaisha, Defendants.

No. 79 Civ. 364 (HFW).

United States District Court, S. D. New York.

May 16, 1979.

Vincent, Berg, Russo, Marcigliano & Zawacki, New York City by Stephen A. Frank, New York City, of counsel, for plaintiff.

Kirlin, Campbell & Keating, New York City by Enrico S. Sanfilippo, New York City, of counsel, for defendants.

## OPINION

WERKER, District Judge.

This action was commenced by The Travelers Indemnity Co. ("Travelers") against the defendant Nippon Yusen Kaisha ("Nippon") for nondelivery of a shipment of 24 cases of cigarette lighters transported aboard the M.S. Kiso Maru from Kobe, Japan to Boston, Massachusetts. Nippon has moved to transfer this action to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). Travelers has cross-moved for summary judgment pursuant to Fed.R. Civ.P. 56.

### 1.

The following facts are not in dispute.

In May 1977, the Colibri Division of Park Lane Associates Inc. ("Colibri"), a Rhode Island corporation engaged in the business of importing and distributing cigarette lighters, purchased a quantity of cigarette lighters from the Penguin Co., Ltd. ("Penguin") in Japan. The purchase price of ¥9,019,500 (Japanese yen) was paid by Colibri by letter of credit dated April 22, 1977 drawn on the Industrial National Bank of Rhode Island.

Penguin delivered the lighters to Nippon in Kobe for delivery to Boston, and Nippon issued a bill of lading which stated that "Twenty Four (24) Cases Only" of "CIGARETTE LIGHTERS" had been received in "apparent good order and condition." Nippon stowed the lighters, for its own convenience, in a container which was sealed and placed aboard the M.S. Kiso Maru.

The bill of lading contained on its face the type-written words and figures "DECLARED VALUE: ¥9,109,500.–" in a column bearing the heading "Description of Goods." The bill of lading described the 24 cases as bearing the following "Marks & Nos.":

| 5 cases bearing | "K 8775<br>BOSTON<br>C/No. 437–441<br>MADE IN JAPAN" |
|---|---|
| 2 cases bearing | "K 8786<br>C/No. 442–443" |
| 2 cases bearing | "K 8882<br>C/No. 444–445" |
| 5 cases bearing | "K 9069<br>C/No. 446–450" |
| 10 cases bearing | "K 9070<br>C/No. 451–460" |

The bill of lading also indicated that the cases bore the "SIDE MARKS: –BA–1428."

The bill of lading was negotiated to Colibri and Colibri thereby obtained title to the lighters. Colibri received along with the bill of lading an invoice and a packing list, both of which were prepared by Penguin and which indicated that the 24 cases contained 12,000 cigarette lighters and 1,440 pieces of spare parts for lighters. The invoice and the packing list both identified the 24 cases with the same numbers and marks appearing on the bill of lading as quoted above. Affid. of Chandler J. Moisen, sworn to Jan. 19, 1979, ¶¶ 4, 6 & exhs. A, C.

The bill of lading as issued to the "ORDER OF INDUSTRIAL NATIONAL

BANK OF R.I. PROVIDENCE, R.I." Nippon was obligated under the express terms of the bill of lading to transport the goods "from the place of receipt or the port of loading to the port of discharge or the place of delivery . . . and there to be delivered unto order or assigns."

On or about June 3, 1977, the M.S. Kiso Maru arrived at Boston and all of its cargo, including containers, was discharged by Bernard S. Costello, Inc., a stevedoring company engaged and paid for by the Massachusetts Port Authority. Nippon's agents opened the container in which the 24 cases of cigarette lighters had been stowed, but the 24 cases were found to be missing.

Colibri had insured the cigarette lighters against loss under a marine insurance policy issued by Travelers, and after the lighters were discovered to be missing, Colibri made claim to Travelers and received payment of $37,256.66.

In January 1979, Travelers commenced this action to recover the declared value of the cigarette lighters.

### 2.

■ This action is governed by the Carriage of Goods by Sea Act ("Cogsa"), 46 U.S.C. § 1300 et seq. To make out a prima facie case under Cogsa, Travelers must show that the cigarette lighters were received in good condition by Nippon for transportation to Boston and that the lighters were not delivered as required. If Travelers should make such a showing, in order to escape liability Nippon would have to show that the loss was due to one of the causes excepted under Cogsa, 46 U.S.C. § 1304(2), or that "it exercised due diligence to avoid and prevent the harm." *Lekas & Drivas, Inc. v. Goulandris*, 306 F.2d 426, 429 (2d Cir. 1962); *accord, Yawata Iron & Steel Co. v. Anthony Shipping Co.*, 396 F.Supp. 619, 621 (S.D.N.Y.1975) (Lumbard, J., sitting by designation), *aff'd mem.*, 538 F.2d 317 (2d Cir. 1976); *Insurance Co. of North America v. S.S. Flying Trader*, 306 F.Supp. 221, 222 (S.D.N.Y.1969). *See also Vana Trading Co. v. S.S. "Mette Skou"*, 556 F.2d 100, 104–05 (2d Cir. 1977), *cert. denied*, 434 U.S. 892, 98 S.Ct. 267, 54 L.Ed.2d 177 (1978).

While Nippon concedes that it received 24 cases and that these 24 cases were not delivered, it contends that summary judgment must be denied because Travelers has failed to adduce any admissible evidence establishing the *contents* of the 24 cases. Absent any such proof, Nippon argues that Travelers has not made out a prima facie case for recovery. Nippon further argues that summary judgment is precluded because genuine issues of material fact exist as to whether the bill of lading contained a valid declared valuation clause and as to how the goods were stolen or otherwise lost.

### 3.

■ In approaching Travelers' motion for summary judgment, the Court is mindful that "[s]ummary judgment is a harsh remedy to be granted only where there are no material issues of fact to be tried." *Flli Moretti Cereali v. Continental Grain Co.*, 563 F.2d 563, 565 (2d Cir. 1977). The Court's function in deciding a summary judgment motion is not to try factual issues, but rather, to determine whether any material issues of fact exist to be tried. *Id.* at 566; *United States v. Bosurgi*, 530 F.2d 1105, 1120 (2d Cir. 1976). In reaching a decision on summary judgment, the Court must resolve all doubts and draw all reasonable inferences in favor of the party opposing summary judgment, and the burden is on the moving party to demonstrate the absence of material questions of fact. *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975).

■ However, the law also requires a party opposing summary judgment to do more than rest on his pleadings when the moving party has presented facts showing his opponent's case to be meritless. In a recent decision recognizing the importance of "procedural devices capable of terminating litigation quickly efficiently," the second circuit reviewed the provisions of Fed.R.Civ.P. 56:

Rule 56(e) provides that when a motion for summary judgment is supported by

the documents listed in Rule 56(c)—depositions, affidavits, answers to interrogatories, and admissions—an adverse party may not rest upon mere conclusory allegations or denials. The party opposing the motion must set forth 'concrete particulars,' . . . and cannot make a secret of his evidence, holding it close to his chest until the trial. . . . It is not sufficient merely to assert a conclusion without supplying supporting arguments of facts in opposition to the motion. . . .

. . . [T]he policy favoring efficient resolution of disputes, which is the cornerstone of the summary judgment procedure, would be completely undermined if unsubstantiated assertions were sufficient to compel a trial.

*SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978) (Kaufman, C. J.) (citations and footnote omitted).

█ Travelers has presented ample evidence of its entitlement to recovery for nondelivery of the 24 cases of cigarette lighters. Cogsa provides that "a bill of lading shall be prima facie evidence of the receipt by the carrier of the goods as therein described . . . ." 46 U.S.C. § 1303(4). Hence, the clean bill of lading issued by Nippon is prima facie proof of Nippon's receipt of "Twenty Four (24) Cases Only" of "CIGARETTE LIGHTERS" in "apparent good order and condition."

Nippon's contention that summary judgment is precluded because of Travelers' failure to provide proof of the contents of the 24 cases Nippon admittedly received and failed to deliver is unpersuasive. While it is correct that a "clean bill of lading in the case of packaged goods merely attests to apparent good condition of cargo, based on external inspection," *Vana Trading Co. v. S.S. "Mette Skou"*, 556 F.2d at 103 n.4, Travelers has in fact provided proof of the contents of the 24 cases. The invoice and the packing statement provide documentary proof that the 24 cases contained 12,000 cigarette lighters and 1,440 pieces of spare cigarette lighter parts. The admissibility of these two documents, copies of which were annexed to the Moisen affidavit, has not been specifically put in issue by Nippon. William A. Cotter, a claims manager for Nippon, states that "there is nothing in any of the documents received by me which establishes that the contents of the said 24 cases consisted of cigarette lighters or, for that matter, of any other commodity." Affid. of William A. Cotter, sworn to Feb. 23, 1979, at 2. Cotter does not, however, identify the documents he reviewed nor does he make reference to either the invoice or the packing list.

Nippon has provided no proof whatsoever that the 24 cases did not contain the cigarette lighters identified by the bill of lading. This is not a case of cargo damage where goods contained in packages are delivered in a damaged condition. Rather, this is a case where the packages were not delivered at all. In the face of the bill of lading, the invoice and the packing list, all of which support the conclusion that the 24 cases in issue contained cigarette lighters and cigarette lighter parts, Nippon's speculations that the 24 cases may not have contained the cigarette lighters do not sufficiently raise genuine issues of fact so as to avoid summary judgment.

Moreover, it should be noted that an earlier affidavit of William Cotter contains what is tantamount to an admission that Nippon received 24 cases of cigarette lighters:

[Travelers] seeks to recover the sum of $32,281.68 for alleged non-delivery of a shipment of *24 cases of cigarette lighters*, transported by [Nippon] aboard the M.S. Kiso Maru from Kobe, Japan to Boston, Massachusetts. The 24 cases were received by defendant at Kobe, stowed for its convenience in Container # H 9109, sealed and placed aboard the vessel.

[The container] was transported to the port of Boston where [Nippon] discharges all of its cargo into the terminal of the Massachusetts Port Authority (Massport). The discharging of all of our cargo, including containers, is performed by Bernard S. Costello Inc., a stevedoring company engaged and paid for by Massport.

Since Container # H 9109 contained goods of shippers other than that of the subject shipment, our agents in Boston had Container # H 9109 opened and stripped of its contents. *The 24 cases of cigarette lighters* were not found in the container.

Affid. of William A. Cotter In Support of Motion to Transfer, sworn to Feb. 12, 1979, at 1–2 (emphasis added).

■ Nippon further contends that summary judgment must be denied because issues of fact exist as to how the 24 cases were stolen or lost. This contention must be rejected. Nippon's attorney raises "hypothetical cases" as to how the lighters could have been possibly stolen. Nippon's Memorandum in Opposition to Summary Judgment, at 6–7. These unsupported purely conjectural suppositions of Nippon's attorney are not sufficient under Fed.R. Civ.P. 56(e) to ward off summary judgment. The only possible explanation for the disappearance of the cigarette lighters which has some basis in fact is Nippon's belief that the lighters were stolen by employees of the stevedore. Affid. of William A. Cotter, sworn to Feb. 12, 1979, at 2–3. Even assuming this to be true, Nippon would nevertheless be liable for the wrongdoings of the stevedore. *Vana Trading Co. v. S.S. "Mette Skou"*, 556 F.2d at 105; *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 812 (2d Cir. 1971). In the *Leather's Best* case, the second circuit noted that:

upon landing the cargo, the carrier assumed the status of bailee and continued to occupy that status, remaining liable for the cargo's safe delivery, regardless into whose hands it placed the cargo, unless it terminated its liability . . . in accordance with the bill of lading. . . . [F]or purposes of determining [the carrier's] liability, it stands in the shoes of the agent it utilized to perform its obligations, the negligence of the agent being imputed to the principal.

451 F.2d at 812. *Accord, David Crystal, Inc. v. Cunard Steam-Ship Co.*, 339 F.2d 295 (2d Cir. 1964), *cert. denied*, 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1965). In the

instant action, Nippon utilized the terminal of the Massachusetts Port Authority ("Massport") to discharge its cargo, and the discharging of all of its cargo was done by Bernard S. Costello, Inc. ("Costello"), a stevedoring company engaged by Massport. Thus, whether the loss of the cigarette lighters was caused by Massport or Costello or both, Nippon would nevertheless be responsible. Nippon's recourse is to seek indemnity from Massport or Costello.

Nippon's final argument against the granting of summary judgment is its contention that questions of fact exist as to the validity and meaning of the phrase "DECLARED VALUE: ¥9,109,500.–" which appears on the face of the bill of lading. Nippon argues that summary judgment must be denied because it is not clear why the phrase was allowed to remain on the bill of lading and what it exactly means. In any event, Nippon alleges, the phrase does not constitute a valid *ad valorem* declaration in that the terms of the applicable tariff were not followed. Affid. of William A. Cotter, sworn to Feb. 23, 1979, at 3.

It is clear that these contentions are not sufficient to warrant denying the motion for summary judgment, at least with respect to liability, for the issue of whether or not the bill of lading contains a valid *ad valorem* declaration goes to damages only. *See* Nippon's Memorandum in Opposition to Summary Judgment, at 6. Hence, the only issue remaining before the Court is whether genuine issues of material fact exist as to whether Travelers' recovery is to be limited to $500 per package pursuant to Cogsa, 46 U.S.C. § 1304(5).

Nippon has not sufficiently put the validity and meaning of the phrase "DECLARED VALUE: ¥9,019,50.–" into issue. The phrase appears clearly on the face of the bill of lading in a column bearing the heading "Description of Goods." Nippon pleads ignorance as to why the phrase was permitted to remain on the bill of lading, and speculates that "[i]t might have been an oversight on the part of the bill of lading clerk, it might have been left on the bill of lading at the request of the shipper, or it

might have been left on its face for a number of reasons of which we have no idea at the present time." Affid. of William A. Cotter, sworn to Feb. 23, 1979, at 3. Nippon cannot be permitted to compel a trial solely on the basis of a claim of ignorance and unsupported conjecture. While Nippon has submitted a copy of a telex from its Tokyo office purporting to explain the presence of the declaration of value on the bill of lading, *see* Supplemental affid. of William A. Cotter, sworn to March 2, 1979, this document is completely self-serving, appears to have been prepared solely for purposes of this motion, and does not identify the person who prepared it or anyone else. The telex is not the type of evidence contemplated by Fed.R.Civ.P. 56(e) to be used to oppose a motion for summary judgment.

Moreover, the applicable tariff, which was submitted by Nippon, dispels any remaining doubt as to the meaning of the declared value phrase appearing on the bill of lading. The tariff provides:

> The shippers who have elected to show value of the goods on the Bill of Lading shall be deemed to have desired to be covered for the value in excess of that allowed by the carrier's regular Bill of Lading form, and must be assessed the . . . additional [*ad valorem* freight] charge.

Affid. of William A. Cotter, sworn to Feb. 23, 1979, exh. B. *See also* Cogsa, 46 U.S.C. § 1304(5).

Nippon correctly points out that Travelers has not complied with the terms of the tariff in that it has not yet paid the additional *ad valorem* freight charge. The tariff does indeed provide that the additional *ad valorem* liability will be assumed by the carrier only "at the request of the shippers and upon payment of an additional charge of 5.3% ad valorem of the total declared FOB valuation in addition to the stipulated rate on the commodities shipped . . . ." Affid. of William A. Cotter, sworn to Feb. 23, 1979, exh. B. However, the above-quoted portion of the tariff makes it clear that the carrier must assess the additional freight charge before it is to be paid. The fact that a shipper requests additional *ad valorem* coverage is established by showing the value of the goods on the bill of lading, which was done in the instant case.

Thus, on the basis of the evidence presently before the Court, I conclude that no genuine issues of material fact exist as to liability or damages.

4.

In accordance with the above, the plaintiff's motion for summary judgment is granted. The defendant's motion to transfer this action to the District of Massachusetts is consequently rendered moot. Judgment is awarded in favor of Travelers for $32,281.68 plus interest and costs less a set-off in an amount equal to the appropriate additional *ad valorem* freight charge. Submit judgment accordingly.

SO ORDERED.