**HIGHLANDS INSURANCE COMPANY as Subrogee, Plaintiff-Appellant,**

v.

**STRACHAN SHIPPING COMPANY, Defendant-Appellee.**

No. 84–5993.

United States Court of Appeals, Eleventh Circuit.

Oct. 7, 1985.

Robert W. Blanck, Hayden & Milliken, P.A., John D. Kallen, Miami, Fla., for plaintiff-appellant.

Jack M. Coe, Lee, Schulte, Murphy & Coe, P.A., Miami, Fla., for defendants-appellees.

Before JOHNSON and HENDERSON, Circuit Judges, and ALLGOOD *, District Judge.

JOHNSON, Circuit Judge:

This action for breach of bailment, breach of warranty to perform in a workmanlike manner, negligence, and breach of a stevedoring contract is brought against a stevedoring firm, Strachan Shipping Co., by an insurer, Highlands Insurance Co., as subrogee for a Miami import firm that ordered 550 mysteriously disappearing color television sets. We AFFIRM the lower court's entry of judgment for Strachan.

**Facts and Proceedings Below**

In August 1981 a Miami firm, Sunday Imports, ordered 550 color TV sets from General Electric in Portsmouth, VA for

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

resale to a client in Venezuela. Pilot Freight Company picked the sets up at GE, packed them in a container (the "land trailer," # 5572), and took them to its lot at Hollywood, FL where the trailer was emptied.

A day later, Caribbean Transportation picked up a sealed 40-foot "seagoing trailer" (REAZ # 600373) from Pilot Freight and delivered it to Lot 1 at the Port of Miami, a lot assigned to the appellee, Strachan Shipping, a Georgia stevedoring company licensed to operate at the Port. The trailer ostensibly contained the TV sets, but when it was delivered to Lot 1 it was not weighed (the scales were broken) and no official at the lot ever looked into or unpacked the container. Five days later, when Strachan was to load the still-sealed container on a vessel, it was missing—from a compound with a 6½ foot chain link fence and a perpetually guarded gate. Police have not recovered the trailer or the sets.

Since Sunday Imports never received the TV's, it claimed the face amount of its cargo insurance policy from appellant Highlands Insurance. Highlands paid the claim, and then brought this suit as a subrogee of Sunday Imports against Strachan charging breach of bailment, breach of warranty to perform in a workmanlike manner, negligence, and breach of the stevedoring contract. At trial, the lower court found that Highlands did not prove its *prima facie* case and entered judgment in favor of Strachan. The single issue before us on appeal is whether that ruling was clearly erroneous.

**Discussion**

The court below concluded that the plaintiff, Highlands, had the burden of proving by a preponderance of the evidence that the events it alleged actually occurred. *Gardner v. Wilkinson*, 643 F.2d 1135, 1137 (5th Cir.1981). As a part of this proof, Highlands was required to show by a preponderance of the evidence that the 550 TV sets in question were actually delivered in good order to the bailee Strachan. *See Stein Hall & Co., Inc. v. The SS CONCORDIA VIKING*, 494 F.2d 287 (2d Cir. 1974). We agree with the trial court that

Highlands failed to prove this element of its *prima facie* case.

█ It is well settled that documentary evidence alone, such as a bill of lading, is insufficient to establish proof of delivery of the contents of a sealed container. *Spartus Corp. v. The S.S. Yafo*, 590 F.2d 1310, 1319 (5th Cir.1979). *See also Pillsbury Co. v. Illinois Central Gulf Railroad*, 687 F.2d 241, 244 (8th Cir.1982) (Second, Third, Sixth and D.C. Circuit citations to the same effect). Direct evidence, such as the testimony of an eyewitness to the loading of the container, is necessary to confirm the contents. *Id.*

Highlands produced only documentary evidence to prove its case. It marked as exhibits a number of written bills of lading tracing various transfers. The crucial transfer of the sets was that from Pilot to Caribbean Transportation in Hollywood, FL. The only evidence that the 550 TV sets were actually unloaded from the land trailer and loaded into the seagoing trailer in Hollywood is a two-page handwritten "worksheet" which records that someone named "Jim" offloaded the inland trailer when it arrived. There is also an entry on this worksheet that shows a reloading of 19,250 lbs., the weight of the TV shipment. But the document does not identify the number of the trailer so loaded or its contents, nor does it note its sealing. The trial judge admitted this evidence as a business record, but refused to give it much weight. No direct evidence corroborated the reloading—neither "Jim" nor any other eyewitness was produced by Highlands—and the trailer was never weighed, unsealed, unloaded or otherwise inspected at the Strachan lot. Thus, the trial judge concluded that Highlands did not prove the presence of the TV sets in the sealed seagoing container by a preponderance of the evidence.

Highlands argues that this decision was clearly erroneous. It says that it has documented an unbroken chain of custody of the TV's and that in the face of this evidence, Strachan should have to show that the seagoing trailer did *not* contain the

TV's. The evidence to which Highlands refers includes, *inter alia:*

1. A waybill showing that Pilot picked up the 550 sets in Virginia and unloaded them in Hollywood, FL.

2. A "shipper's commercial invoice" that Highlands says "shows that the television sets were loaded in trailer REAZ–600373, sealed and weighed (19,250 pounds)." The invoice itself appears to refer to the sealed container.

3. The handwritten "worksheet" mentioned above.

4. A waybill showing that Caribbean Transportation picked up the sealed seagoing trailer (the carrier appears to have signed Pilot's delivery receipt for 550 TV's weighing 19,250 lbs.).

5. A Strachan dock receipt for the trailer, contents marked "full" and seal intact.

█ We cannot conclude that the trial court was clearly in error in finding that there is nothing in these documents to show that the TV sets actually were in the sealed seagoing container, absent direct evidence to that effect. Highlands' assertion that Strachan must prove that the sets were *not* in the container rests largely on a New York district court case, *Traveler's Indemnity Company v. M.S. Kiso Maru,* 471 F.Supp. 898 (S.D.N.Y.1979). *Traveler's Indemnity* is inapposite. That suit was brought under the Carriage of Goods By Sea Act (COGSA) which specifically provides that "a bill of lading shall be *prima facie* evidence of the receipt by the carrier of the goods therein described." *Id.* at 901. There, the bill of lading was moreover supported by an affidavit that the court construed as containing an admission that the cargo was received. *Id.* Further, Nippon (the counterpart to Strachan in this case) did not, like Strachan, receive sealed goods. It received boxes of cigarette lighters, issued a bill of lading, sealed the boxes itself into a container for its own convenience, later discovered them missing from the container, and then tried to claim that the boxes may not have contained the lighters.

Other cases cited by Highlands to support its position are similarly distinguish-able. None appears to controvert the established rule requiring the plaintiff to supplement documentary evidence with some form of direct evidence of the contents of a sealed container. The district court's findings, in sum, were not clearly erroneous. Thus, we AFFIRM.