[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 19, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-11570

_____

D. C. Docket No. 00-02026-CV-FAM

A.I.G. URUGUAY COMPANIA DE SEGUROS, S.A.,
as subrogee,

Plaintiff-Appellee,

versus

AAA COOPER TRANSPORTATION,
an Alabama Corporation,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 19, 2003)**

Before BIRCH, CARNES and BRUNETTI[*], Circuit Judges.

BIRCH, Circuit Judge:

_____

[*] Honorable Melvin Brunetti, United States Circuit Judge for the Ninth Circuit, sitting by designation.

AAA Cooper Transportation accepted for shipment three shrink-wrapped pallets from Motorola, each containing a number of cellular phones. These pallets disappeared before delivery, and A.I.G. Uruguay Compania de Seguros, S.A., sues under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, for resulting damages. In this appeal, we clarify the evidentiary predicate necessary to prove the contents of a sealed container under the Carmack Amendment. We AFFIRM the district court.

## I. BACKGROUND

The relevant facts in this case are undisputed, and we accept the district court's determination of them at trial, summarized for our purposes as follows. Abiatar, S.A. ("Abiatar"), an Uruguayan electronics company, contracted with Motorola, Inc., for the sale of 400 cellular telephones at $315 per phone, for a total of $126,000. Motorola packaged the phones at its factory and informed Abiatar's chosen freight forwarder, Miami International Forwarders ("MIF"), that the phones were ready to be shipped. MIF employed AAA Cooper Transportation ("Cooper"), a common carrier based in Dothan, Alabama, to transport the phones by ground from Motorola's factory in Illinois to Miami, Florida, where they would be shipped onward to Uruguay by MIF.

2

Cooper received the shipment at Motorola's factory on 24 August 1999, loaded it onto an truck, and drove it to Miami, where it arrived on 26 August. The shipment was unloaded at the Cooper Miami terminal and, on 27 August, loaded onto a local delivery truck. The driver of this truck attempted delivery to MIF that same day, but was turned away from MIF's terminal. The truck returned to Cooper's terminal, where the shipment was unloaded from the truck and loaded into a storage trailer for the weekend. On the following Monday, 30 August, the shipment was again loaded onto a local delivery truck, but when the truck later arrived at MIF for delivery, it was discovered that the Motorola shipment was not among the truck's contents. To date, the disappearance of the shipment is unexplained.

Abiatar insured this shipment through A.I.G. Uruguay Compania de Seguros, S.A. ("AIG"), who paid Abiatar's claim for loss of the phones. AIG, as subrogee of Abiatar, sued Cooper for its apparent negligence, and, following a bench trial, the district court entered judgment for AIG in the amount of $126,000, the full value of the lost shipment.

## II. DISCUSSION

On appeal following a bench trial, a district court's conclusions of law are reviewed <u>de novo</u>, and its findings of fact are reviewed for clear error. <u>MiTek</u>

3

Holdings, Inc. v. Arce Eng'g Co., 89 F.3d 1548, 1554 (11th Cir. 1996). The Carmack Amendment to the Interstate Commerce Act makes common carriers liable for actual loss of or damage to shipments in interstate commerce. 49 U.S.C. § 14706(a)(1). A prima facie case is established under the Carmack Amendment upon proof by a preponderance of the evidence that (1) the goods were delivered to the carrier in good condition, (2) the goods arrived at the destination in damaged condition, and (3) a specified amount of damages resulted. Fine Foliage of Fla., Inc. v. Bowman Transp., Inc., 901 F.2d 1034, 1037 (11th Cir. 1990).

Once a prima facie case is established, the burden shifts to the carrier to prove (1) that it was free from negligence, *and* (2) that the damage to the cargo was caused by one of the five excusable factors: "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." Id. at 1039 (quoting Missouri Pacific R. Co. v. Elmore & Stahl, 377 U.S. 134, 137, 84 S.Ct. 1142, 1144 (1964)).

If the carrier cannot meet this burden, then liability is established. The inquiry then becomes the amount of damages and, usually, whether the carrier legitimately limited its liability for the shipment to a specified value or amount. A carrier subject to the Carmack Amendment may only limit its liability under the released value provision of 49 U.S.C. § 14706(c)(1), which states:

4

a carrier providing transportation or service . . . may . . . establish rates for the transportation of property (other than household goods described in section 13102(10)(A)) under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation.

Cooper argues that the district court improperly applied this framework in two ways: first, that the district court erred in allowing AIG to prove its prima facie case with circumstantial evidence, and, second, that the district court erred in finding that Cooper did not validly limit its liability on the shipment. We discuss each of these arguments in turn.

A. Proof of Delivery in Good Condition

One of the elements in a Carmack Amendment case is proof that the goods were delivered to the carrier in good condition. Fine Foliage, 901 F.2d at 1037. When the shipment at issue is not a sealed container, then the "carrier has the initial burden of informing itself of the condition of the goods received." Offshore Aviation v. Transcon Lines, Inc., 831 F.2d 1013, 1014 (11th Cir. 1987) (per curiam). Because the carrier has the ability before and during shipment to ascertain for itself the nature and condition of the shipment, we do not require heightened proof. In these cases, a recitation of good condition and contents on the

5

bill of lading may suffice.  See Spartus Corp. v. S/S Yafo, 590 F.2d 1310, 1319 (5th Cir. 1979).

When the shipment at issue is a sealed container, then the carrier has no independent ability to ascertain the contents of the shipment, and the shipper is held to a higher standard of proof.  The bill of lading, by itself, is never sufficient to establish a prima facie case.  Offshore Aviation, 831 F.2d at 1014-15.  "Where goods are shipped under seal, the condition of the goods cannot be within the carrier's knowledge.  A bill of lading accordingly can attest only to apparent or external good condition, and . . . the shipper may reasonably be required to present some additional evidence of the condition of the goods at the time of delivery." Pillsbury Co. v. Illinois Cent. Gulf R.R., 687 F.2d 241, 244 (8th Cir. 1982).  "The carrier . . . should not have the (initial) burden of separating damages arising from causes prior to shipment from damages due to negligent stowage."  Id. (internal quotations omitted).

Our precedent in the Eleventh Circuit indicates that the type of proof necessary to meet this heightened standard depends on whether the shipment at issue was damaged or destroyed.[1]  When the sealed shipment was damaged en route, and, consequently, the question is only the original *condition* of the

---

[1]  We know of no other Circuit that has made this particular distinction, yet it is apparent in our prior cases on the subject that this is the line we have drawn.

shipment, then reliable, substantial circumstantial evidence of condition will suffice to prove a prima facie case. See Fine Foliage, 901 F.2d at 1038 (ferns damaged); Frosty Land Foods Int'l, Inc. v. Refrigerated Transp. Co., 613 F.2d 1344, 1347 (5th Cir. 1980) (shipment of meat damaged); see also Allied Tube & Conduit Corp. v. Southern Pac. Transp. Co., 211 F.3d 367, 371 (7th Cir. 2000) (pipes damaged); Pharma Bio, Inc. v. TNT Holland Motor Express, Inc., 102 F.3d 914, 917 (7th Cir. 1996) (blood cells damaged by non-refrigeration). The bill of lading, by itself, is not sufficient circumstantial evidence to show good condition at delivery to the carrier. Reider v. Thompson, 197 F.2d 158, 161 (5th Cir. 1952). But a case may be made by a bill of lading that recites receipt of the sealed packages in good external condition, when coupled with damage "of a kind which could not in the nature of things have occurred before the shipment." McNeely & Price Co. v. The Exchequer, 100 F. Supp. 343, 344 (E.D. Pa. 1951); see also Reider, 197 F.2d at 161.

When the shipment was lost, destroyed, or damaged to such extent that it is impossible to tell what was contained in the shipment, then the question is not only the original condition of the shipment, but also the *contents* of the shipment. When a sealed shipment disappears or is destroyed, we cannot tell by looking at the remains of the shipment, if any, what it originally contained. Therefore, we have

7

said in these circumstances that we require "direct" evidence of the original contents and condition of the shipment to prove a prima facie case. "It is well settled that documentary evidence alone, such as a bill of lading, is insufficient to establish proof of delivery of the contents of a sealed container." Highlands Ins. Co. v. Strachan Shipping Co., 772 F.2d 1520, 1521 (11th Cir. 1985). "[D]ocuments cannot suffice for prima facie proof of contents in sealed containers." Offshore Aviation, 831 F.2d at 1015. "[T]he established rule requir[es] the plaintiff to supplement documentary evidence with some form of direct evidence of the contents of a sealed container." Highlands, 772 F.2d at 1522. "Direct evidence, such as the testimony of an eyewitness to the loading of the container, is necessary to confirm the contents." Id. at 1521; see also Continental Grain Co. v. Burlington N. Ry. Co., 837 F.2d 836, 840 (8th Cir. 1988) (quantity of grain lost). "A prima facie case should not rest on mere possibility." Offshore Aviation, 831 F.2d at 1015.[2]

---

[2] The First Circuit's decision in Camar Corp. v. Preston Trucking Co., 221 F.3d 271 (1st Cir. 2000), is not inconsistent with this paradigm. In Camar, a shipment of used marine equipment was lost by the carrier, and the district court reasoned that a prima facie case under the Carmack Amendment was presented by the mere fact of disappearance en route:

> [T]he parties do not dispute that a change in the condition of the equipment occurred while [the carrier] had custody of it: the equipment existed at the point of origin . . . and then vanished in transit. In other words, the condition of the equipment was relatively good at the point of origin and relatively bad (nonexistent) at the point of arrival.

In <u>Highlands</u>, a case concerning the loss of a shipment of televisions, we found that the district court did not clearly err by refusing to accept documentary evidence of an "unbroken chain of custody" as the necessary showing to prove the contents of a sealed container. 772 F.2d at 1521-22. In <u>Offshore Aviation</u>, a case in which a shipment of airplane parts was substantially destroyed in a fire, we declared that a similar "series of documents tracing the goods from their . . . beginnings to their arrival [at the carrier]" could not suffice for proof, and relied instead on a letter from an actual employee involved in the shipment in finding a question of material fact that precluded summary judgment. 831 F.2d at 1015-16.

---

221 F.3d at 275. Though cited by AIG as a case in which circumstantial evidence is found sufficient to prove the contents of a lost shipment, the <u>Camar</u> case did not involve a <u>sealed</u> container, as far as we can tell from the written opinion. In that circumstance, though we differ on the analysis, we would agree with the First Circuit that a heightened form of proof is not required to present a prima facie Carmack Amendment case.

Nor is the Third Circuit's decision in <u>Beta Spawn, Inc. v. FFE Transportation Services, Inc.</u>, 250 F.3d 218 (3d Cir. 2001), inconsistent. In that case, a sealed shipment of mushroom spawn was damaged when it was not refrigerated during transport. If such a case were to be heard in this Circuit, we would require substantial, reliable circumstantial evidence to prove the original condition of the mushrooms. The Third Circuit, albeit through a more complex analysis, required a similar showing. In <u>Beta Spawn</u>, the Third Circuit looked to its precedent and found a case which had been cited for the proposition that "direct evidence" was required for proof in all sealed container cases. 250 F.3d at 224. However, the court in <u>Beta Spawn</u> recognized that the "direct evidence" language was drawn from the district court's opinion on review in that previous case, and proceeded to reject the "direct evidence" requirement as improvident. <u>Id.</u> Instead, the <u>Beta Spawn</u> court read its precedent to hold only that "shippers [must] produce evidence, other than a clean bill of lading, to establish the condition of goods which were not open and visible for the carrier's inspection." <u>Id.</u> It rejected "the view that [their precedent] renders all circumstantial evidence irrelevant," and, just as we would in the Eleventh Circuit for a sealed container case involving damage to the shipment, accepted circumstantial evidence for the requisite proof. <u>Id.</u> at 225.

9

The Eighth Circuit in Continental Grain, a case concerning the disappearance of a quantity of grain in transit, required "direct and affirmative proof of the quantity delivered" to the carrier and accepted "deposition testimony concerning the weighing of the grain" for this proof. 837 F.2d at 840.

Here, the district court found that the shipment did not constitute a sealed container, stating that "the [Cooper] driver . . . picked up three pallets packaged in clear wrapping, and the [Cooper] driver could have counted 80 containers in total on the three pallets. Significantly, [Cooper] does not claim the [Cooper] driver did not pick up three pallets at the Motorola facility." R3-94 at 5. We find that the district court erred in this determination. The three pallets shipped by Motorola were shrink-wrapped in clear material. Each pallet contained either 16 or 32 cartons, each of which in turn contained five smaller boxes, each of which allegedly contained a Motorola cellular phone. A shipment is considered to be a "sealed container" if its contents are not "visible and open to inspection" at the time of delivery to the carrier. Spartus Corp., 590 F.2d at 1319. Here, the pallet could not have been "opened" by the carrier for inspection in a significant way. The transparency of the outer layer of tape does not negate the fact that the actual phones were inside two more layers of boxes. The carrier may have been able to peer through the shrink-wrap and count 13 to 16 cartons, but there was no way for

10

the carrier to independently ascertain the contents and condition of the actual goods to be shipped. The heightened proof required of shippers for sealed containers turns on whether the carrier can reasonably be expected to determine the nature of the shipment through independent confirmation. Where, as here, the container is packaged in such a way as to thwart independent confirmation, we require heightened proof from the shipper of the sealed container's contents.

Cooper argues that the district court also erred by reasoning that the shipment was not a sealed container because it was not transported by ship on the open seas. According to Cooper, the district court distinguished Highlands and Offshore Aviation as cases involving sealed, ocean-going containers, and declined to apply those cases on that basis. We are not sure that the district court actually relied on that specific distinction, but we agree with Cooper that the sealed container doctrine is not restricted to shipments traversing the seas. We have not been presented with any argument from the parties as to why sealed ocean-going containers should be treated differently from other sealed containers, and we have never made such a distinction explicit in any of the relevant cases. All sealed containers, whether shipped by land or sea, present the same problem for carriers: the contents and good condition of the contents cannot be confirmed by practical

11

visual analysis. Thus, we require heightened evidence to prove these attributes for all sealed containers, not just those transported on ships.

In any event, the district court decided that the <u>Fine Foliage</u> line of cases, which require only circumstantial evidence, controlled. Therefore, it found AIG's evidence sufficient to establish a prima facie case. As we have discussed, the <u>Fine Foliage</u> cases are qualitatively different from the <u>Offshore Aviation</u>/<u>Highlands</u> line of cases. The two lines of cases are distinct and distinguishable. We explicitly pointed out the nature of the dichotomy in our consideration of <u>Fine Foliage</u>. In that case, a shipment of ferns was damaged during transit, and we held that circumstantial evidence of the ferns' original condition was sufficient to meet the shipper's prima facie burden. 901 F.2d at 1038-39. We distinguished the <u>Highlands</u> line of cases, which require direct evidence, by saying that:

> <u>Highlands</u> involved a situation in which there was no proof, other than a bill of lading, that TV sets, reported stolen, had actually been placed in a sealed seagoing container. It stands only for the proposition that evidence "such as the testimony of an eyewitness to the loading of the container is necessary to confirm the contents." Here, there is no dispute that the ferns were loaded into the container.

901 F.2d at 1038 (internal citation omitted). When original condition of the contents is at issue, as in the <u>Fine Foliage</u> case, reliable and substantial circumstantial evidence will suffice, but when the contents themselves are in question, as in <u>Highlands</u> and <u>Offshore Aviation</u>, direct evidence must be

12

presented. In this case, Motorola shipped three sealed containers. The sealed containers and their contents vanished. Therefore, AIG was required to present direct evidence of the contents, and the district court erred in concluding otherwise.

However, we cannot fault the result. The evidence presented by AIG is sufficiently direct evidence of the contents of the shipment. When the particular phones to be packaged to fill the order are selected, their serial numbers are scanned into the Motorola system, and that record follows the order from station to station as it proceeds toward shipment. These serial numbers appear automatically on the invoice generated before the shipment leaves the facility. This record is made contemporaneously with the "sealing" of the phones inside the cartons that directly and without inference identifies the contents of that carton, even though we have no testimony of the individual responsible for scanning the phones or the supervisor, if any, with responsibility over the process by which the phones are scanned. However, we would expect their testimony to be general: that this is the process that occurs every day at the facility, and that they do not remember this particular shipment.

It would be easy to strain our precedent and reject this evidence as insufficiently circumstantial or documentary evidence, but doing so disregards the practicalities of largely automated modern industry. Large production quantities

13

and speedy production times are the hallmark of the efficiency sought by our nation's corporations, and it is unrealistic to require eyewitness testimony to prove that a particular shipment was shipped correctly when hundreds or thousands of similar shipments may have left the factory in the interim.[3]  It is also unrealistic to expect that there is an actual eyewitness to the entire process.  Because of production-line specialization, no worker and no manager in modern industry could precisely describe and guarantee the contents of any particular shipment from their factory without reference to the type of documentation presented in this case.  That documentation can be more reliable than eyewitness testimony, and it is an unfair and impractical burden to require a Carmack Amendment plaintiff to obtain eyewitness testimony to the contents of a particular shipment as a condition of bringing suit when such testimony will rarely, if ever, be available in these situations.

We have never said that eyewitness testimony is the <u>only</u> direct evidence that will suffice, but we have said repeatedly that documentary evidence must be supplemented by other direct evidence.  However, what we mean to prevent by

---

[3]  Jesse Garcia, a worker in Motorola's shipping department, said as much in his deposition: "Q: Do you recall this specific shipment?  A:  No.  Without looking at documents and looking at the process flow, it's been so long since this shipment was shipped out, I don't remember that exact day and that exact bill of lading and shipment that day."  R3-86, Deposition of Jesse Garcia, at 25.

requiring this additional "direct" evidence is having the contents of a sealed container proved solely by *after-the-fact* documentation. When business records are routinely and systematically made contemporaneously with the packing and packaging of a particular shipment, and these documents clearly identify the specific contents of those shipments, then we perceive no problem in accepting that proof as the type able to meet the shipper's burden.[4] It is especially so where, as here, there is no incentive for the shipper to falsify the packing lists. Accordingly, we find that the packing lists, which incorporate pre-loaded serial numbers scanned during the process by which the Abiatar order was filled, are sufficient direct evidence of the contents of the shipments to sustain AIG's prima facie burden.

This case involves proof that is qualitatively different than that presented in Highlands or Offshore Aviation, where documentation was rejected as too circumstantial to support a prima facie case. In Highlands, the proffered evidence that the televisions at issue were ever loaded into the sealed container that disappeared was a "shipper's commercial invoice," that, according to the plaintiff, "shows that the television sets were loaded in trailer REAZ-600373, sealed and

---

[4] An analogue to our acceptance of this type of record as "direct" evidence of the contents of a particular sealed shipment is the law of evidence's acceptance of properly authenticated business records as an exception to the hearsay rule. See Fed. R. Evid. 803(6). A contemporaneous record made in the normal course of business has particular guarantees of trustworthiness that persuade us to accept that record as relevant to the matter at issue. Likewise, a contemporaneous record made in the normal course of business is sufficiently trustworthy for us to accept that record as proof in the Carmack Amendment context.

weighed." 772 F.2d at 1522 (internal quotations omitted). We noted in that case that the invoice "itself appears to refer to the sealed container," that is, that the invoice was not an independent, contemporaneous record of the container's loading, but relied on information obtained after the container was sealed. Id. To accord truth to after-the-fact documentation, an inferential leap is required, namely that the documentation relied on some form of reliable evidence from someone who had previously loaded the container. Similarly, a worksheet that recited that someone named "Jim" unloaded the cargo when it arrived was not sufficient, because the notation on that worksheet that the cargo was reloaded failed to specifically "identify the number of the trailer so loaded or its contents, nor [did] it note its sealing." Id. The notation of reloading did not tie the shipment to the particular sealed container that was lost, and, thus, we had no "direct" way of knowing what exactly that container contained.

In Offshore Aviation, the rejected documentary evidence "trac[ed] the goods from their Singapore beginnings to their arrival in California, at which point [the carrier] received them for shipping." 831 F.2d at 1015. The documents "attest[ed] to the serviceability of the parts being shipped, and show[ed] that the weight of the cartons in Singapore corresponded to their weight in California." Id. Again, the deficiency in this evidence is the absence of any direct evidence dating from when

16

the cartons were sealed as to their specific contents. We accepted in that same case a letter from a Singapore Airlines employee that "qualifies the equipment sent to Offshore as being in an unserviceable state." Id. (internal quotations omitted). We called that letter "the only statement in the record that approaches personal knowledge of the condition of the shipment." Id. at 1016 (internal quotations omitted). The Motorola packing list and scanned serial numbers in our case may not be knowledge that can be tied to any particular person, but they approach institutional, or corporate, knowledge of the contents of the container, and we believe that it is only practical and fair to accept such evidence as similarly sufficient.

Therefore, the district court did not err in its result by finding that AIG had proved its prima facie case, though it did err in its analysis by conflating the Fine Foliage condition cases and the Highlands content cases. We proceed now to the limitation of liability question.

### C. Limitation of Liability

The district court concluded that Cooper did not validly limit its liability for the shipment, and Cooper appeals that determination. A carrier is liable for "the actual loss or injury to the property" if it loses or damages the shipment, 49 U.S.C. § 14706(a)(1), unless the carrier limits its liability "to a value established by . . .

17

written agreement between the carrier and shipper." § 14706(c)(1)(A). At the time the pallets were delivered to Cooper for shipment, a bill of lading was executed between the parties. The bill of lading was drafted by Motorola, was non-negotiable, and contained no space for a declaration of released value. Therefore, there was no written agreement between the parties to a released value for the shipment.

Cooper argues that its liability should be limited anyway, arguing that when the shipper fills out the bill of lading on a sealed container, and the shipper misdescribes the type of goods being shipped in order to get a lower shipping rate, the shipper should not be able to benefit even more from that misdescription by being compensated for the full value of the shipment if it is destroyed. According to Cooper, by choosing to misdescribe its goods, the shipper should have known that it was limiting liability. Accordingly, Cooper urges that we reform the bill of lading to identify the type of goods now claimed to have been lost in the shipment with a category that will limit Cooper's liability under the terms of the relevant tariff.

The National Motor Freight Classification is a table of freight categories that is used to assign the proper shipping rate for particular cargo. The classification that appears on the bill of lading for the shipment in this case is NMFC 61700,

18

Class 100, which covers "**Electrical Appliances or Instruments** . . . in inner containers, in cloth bags, or in boxes." R3-109 at Def. Exhs. 4, 6**.** Cooper argues that the appropriate category for this shipment was actually NMFC 62850, which applies to "**Radio-telephones, cellular (Cellular Telephones)**, . . . in boxes." R3-109 at Def. Exh. 6. According to NMFC 62851, NMFC 62850 applies to those phones "not specifically released as to value in accordance with the provisions of item 62820 at time of shipment," and, because the form bill of lading used by Motorola in this case had no space for a declaration of released value, it would be impossible to comply with item 62820, which requires that any released value "must be entered on shipping order and bill of lading in [a specific] form." Thus, we agree that NMFC 62850 was the appropriate classification.

However, the only effect of re-classification to NMFC 62850 would be that Cooper would have charged more to transport the Motorola shipment. NMFC 62850, like the misrepresented category NMFC 61700, does not contain within its terms a limitation of liability. At this point, re-classification to NMFC 62850 would probably only allow Cooper, if it wished, to collect the difference between the shipping charge, but, as Cooper refunded the entire shipping charge once the shipment was lost, that avenue of recovery appears waived.

To obtain limited liability, Cooper argues that the court should classify the shipment as NMFC 62820, which covers "**Radio, Radio-telephone, or Television Transmitting or Transmitting and Receiving Sets, or other Radio Impulse or Wireless Audio (Sound) Impulse Transmitting or Transmitting and Receiving Sets,** separate or combined, in boxes," as a punitive measure against the shipper for its misrepresentation. NMFC 62820 contains several sub-categories that correspond to ranges of released values for the shipment, and Cooper urges this court to apply subcategory 1 of that classification, which applies to shipments with a "[r]eleased value not exceeding $3.00 per pound."

Generally, the federal courts are not here to protect sophisticated business actors from each other, and in the absence of fraud or other sufficient cause for doing so, we will not reform the contract between two such parties. See Buce v. Allianz Life Ins. Co., 247 F.3d 1133, 1150 (11th Cir.) ("[T]he parties to a contract have the right to define the terms of that contract."), cert. denied, 534 U.S. 1065, 122 S. Ct. 666 (2001); FMC Fin. Corp. v. Murphree, 632 F.2d 413, 420 (5th Cir. 1980) (recognizing under Illinois law that the courts "are reluctant to re-write the terms of a negotiated contract between businessmen"). The trial court found that Cooper "introduced no evidence of fraud," R3-94 at 10, and though Cooper argues on appeal that we can infer fraud from the mere fact of misdescription, we have no

20

reason to believe that the misdescription was fraudulent, rather than a mistake. Thus, for reasons of evidentiary insufficiency, our powers of contract reformation do not avail Cooper.

Cooper argues that if the shipment had been appropriately described, it would have increased security over the shipment to ensure its safe storage in Miami. However, there is no evidence that any additional protection would have been effective in preventing the disappearance of this shipment. Testimony from various employees of Cooper demonstrates that the pallets of phones were unloaded Friday afternoon, stored for the weekend, and reloaded onto a local delivery truck the following Monday. Apparently, at some point *after* that truck left the Cooper facility, the packages disappeared. Therefore, any additional security in place at the Cooper facility would not have prevented the loss.

So the only difference in this case if the shipper had correctly represented the contents of the shipment is that Cooper may have charged a higher rate for the transportation of those goods. The goods still would have disappeared, AIG would still have paid the claim for loss to Abiatar, and AIG as subrogee would still sue Cooper for the full value of the shipment. We find in this circumstance that preserving the contract-based relationship between carrier and shipper would be more prudent than reading in a limited liability provision for punitive purposes.

21

Therefore, we find that the district court did not err in determining that Cooper did not limit its liability for the Motorola shipment.

## III. CONCLUSION

The contents of a sealed container must be proven by direct evidence, and the district court erred in finding that circumstantial evidence could be sufficient. However, direct evidence of the contents of the now-missing shipment appears in the record of this case. In particular, the scanning of the serial numbers of particular phones at the time of packaging, an established and recurring operation by the shipper, is sufficient direct evidence of the contents and condition of the sealed shipment. Therefore, we agree with the district court that AIG presented a prima facie case under the Carmack Amendment. We also agree that no limitation of liability exists by virtue of the agreement between the parties, and that it would be improper in this case to impute some degree of limitation based on the mischaracterization of the goods. Perhaps in a case in which a shipper fraudulently misrepresented the contents of a shipment, such reformation would be proper, but there is no evidence of fraud in the record before us. Accordingly, we **AFFIRM.**