[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15067
Non-Argument Calendar
_____

D.C. Docket No. 3:11-cv-00813-MEF-TFM

DOROTHY SNOW,

                                                    Plaintiff - Appellant,

versus

BOSTON MUTUAL LIFE INSURANCE COMPANY,

                                                    Defendant - Appellee,

MEADOWCRAFT, INC.,

                                                    Defendant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(October 16, 2014)

Before MARCUS, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Dorothy Snow ("Snow"), the widow and designated beneficiary under a life insurance policy issued to James Francis Snow ("Mr. Snow") by Boston Mutual Life Insurance Company ("Boston Mutual"), appeals from the district court's final order in favor of Boston Mutual and Snow's former employer, Meadowcraft, Inc. ("Meadowcraft"), in Snow's case raising claims under the Employee Retirement Income Security Act of 1974 ("ERISA"). The amended complaint alleged that Boston Mutual wrongfully denied payment of approximately $115,000 in life insurance benefits to Snow, and sought equitable relief claiming that Boston Mutual, as plan administrator and claims adjudicator, breached certain fiduciary duties it owed to Snow. On appeal, Snow argues that: (1) the district court erred in construing the term "Normal Retirement Date"; and (2) the district court erred in finding that only the plan administrator owed fiduciary duties to the Snows. After careful review, we affirm.

In an appeal following a bench trial, we review the district court's conclusions of law de novo and its findings of fact for clear error. A.I.G. Uruguay Compania de Seguros, S.A. v. AAA Cooper Transp., 334 F.3d 997, 1003 (11th Cir. 2003). We review a district court's grant of summary judgment de novo. Levinson v. Reliance Standard Life Ins. Co., 245 F.3d 1321, 1325 (11th Cir. 2001). All reasonable inferences are due to be drawn in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

2

The relevant facts are these. Boston Mutual issued a group life insurance policy to Meadowcraft to insure the life and death component of Meadowcraft's long term disability plan (the "Plan"). Meadowcraft paid 100% of the premium for group life insurance coverage as a benefit to its employees, and the Plan included a waiver of premium provision allowing the coverage to continue if an employee became disabled. Mr. Snow worked at Meadowcraft from October 1993 until he because disabled in an industrial accident in May 2002, and he died on August 27, 2009 at the age of 66 years and 9 months.

Under the Plan, when a disabled employee's waiver of premium claim is approved, his life insurance:

> will be kept in force: (1) with no further premium cost to him or to the Policyholder; (2) for the life amount in effect at the time; (3) for as long as he is disabled; (4) whether or not the plan stays in force; (5) but in no event beyond the Normal Retirement date in effect as of the date of . . . disability.

Additionally, an employee's insurance under the Plan stops:

> on the first of the following dates: (1) when the Plan stops; (2) when he is no longer eligible for insurance under the Plan; (3) at the end of 31 days from when the last premium was due and not paid if the employee is required to pay part or all of the cost of his insurance; (4) when he leaves his job. But if he leaves his job due to disability, . . . the Policyholder . . . may keep the employee's insurance in force until the Policyholder . . . chooses to stop it or until the employee's normal retirement date, whichever is earlier.

The Plan defines "Normal Retirement Date" as the "normal retirement date provided for by the Policyholder's published or accepted personnel practices."

3

First, we are unpersuaded by Snow's claim that the district court erred in construing the term "Normal Retirement Date." For starters, because the Plan defines "Normal Retirement Date" in reference to Meadowcraft's "published or accepted personnel practices," it was necessary for the district court to examine extrinsic evidence of Meadowcraft's personnel practices to determine the Normal Retirement Date. This does not mean the contract was ambiguous. Courts routinely examine extrinsic evidence to determine the meaning of contract terms even while holding that the contract is unambiguous. We've held that "[t]he parol evidence rule excludes extrinsic evidence offered to vary or contradict, rather than to explain and interpret, the terms of an integrated contract." Pennzoil Co. v. F.E.R.C., 645 F.2d 360, 388 (5th Cir. 1981).[1]

As for Snow's claim that the term "Normal Retirement date" was ambiguous because it referred to Meadowcraft's practices and Meadowcraft did not produce a document labeled as "Meadowcraft Personnel Practices," this argument is meritless. Nothing in Plan limited what the district court could consider as evidence of Meadowcraft's personnel practices, and certainly nothing suggested that the district court could not review any of the materials it did. Nor did the district court's review of these materials signify that the Plan had been amended. In fact, we've allowed district courts to look to sources outside of an ERISA plan

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

to determine the meaning of a term that the plan does not define.  See Tippitt v. Reliance Std. Life Ins. Co., 457 F.3d 1227, 1234 (11th Cir. 2006) (allowing district court to look to outside sources to determine the meaning of "regular occupation").

Moreover, not only was the term not ambiguous, but the district court did not clearly err in construing the Normal Retirement Date to be 65 year old.  This age was found in a summary of Meadowcraft's 401(k) plan, which provided that "your normal retirement age is the date you reach age sixty-five," and in testimony from Meadowcraft human resources employees Larry York and Mary Beth Wilbanks.  Although Mr. Snow was not a 401(k) participant, the record shows that the summary was made available to all salaried employees, and that Mr. Snow attended open-enrollment meetings where attendees received the 401(k) summary stating.  But even if he hadn't received the summary, "ERISA does not require" that a participant "have any knowledge of a written plan's terms."  Moorman v. UnumProvident Corp., 464 F.3d 1260, 1271 (11th Cir. 2006) (quotation marks and citation omitted).[2]

As for whether the district court's interpretation failed to give meaning to all provisions of the Plan, we disagree.  Under the District Court's interpretation of the Plan, an employee who becomes disabled prior to age 65 could continue to receive

---

[2] As for Snow's argument that a copy of the 401(k) plan summary was not placed in the administrative claim record, Snow did not raise this argument below. See Knights Armament Co. v. Optical Sys. Tech., Inc., 654 F.3d 1179, 1186 n.13 (11th Cir. 2011).  In any event, Snow has failed to show any prejudice from any violation of 29 U.S.C. § 1133(2), and has failed to establish that the statute and accompanying regulations even apply to the 401(k) summary.

the waiver of premium benefit until age 65; an employee who becomes disabled after age 65 would be deemed retired and not receive the waiver of premium benefit; and a non-disabled employee could continue to receive the benefit until his actual retirement, although the benefits would be reduced after age 70. No language of the Plan is rendered surplusage under the district court's interpretation. Nor, moreover, do we find any support for Snow's claim that ERISA precludes a Normal Retirement Date of age 65, or that there is any difference between "normal retirement date" and "normal retirement age."

In short, because the district court did not clearly err in finding that the Plan term "Normal Retirement Date" means an employee's sixty-fifth birthday, the district court did not err in concluding that Mr. Snow's life insurance coverage lapsed prior to his death at age 67, and that Snow was not entitled to any benefits under the Plan.

We are also unpersuaded by Snow's claim that the district court erred in concluding that only the plan administrator owed fiduciary duties to the Snows. Snow's ERISA § 502(a)(3) claim for fiduciary breach arises of out the "Defendants'" supposed failure to provide her decedent with (1) a Summary Plan Description, (2) complete and accurate information regarding the Plan, and (3) all material information related to benefits and coverage.  Because these disclosure obligations are statutorily vested with Plan Administrators, the district court looked

6

to the Plan documents and the ERISA statute to determine which entity -- Boston Mutual or Meadowcraft -- was the administrator for Meadowcraft's Plan. After conducting a thorough analysis, the district court concluded "there is no basis for finding Boston Mutual to be the Plan Administrator under ERISA." The district court explained:

> [T]he undisputed evidence establishes that Meadowcraft, rather than Boston Mutual, is the Plan Administrator in this instance. There is no dispute that Mr. Snow's employer was Meadowcraft. There is also no dispute that the Plan was "established or maintained by a single employer" -- Meadowcraft. Thus, while Meadowcraft may not have been expressly designated as the administrator in the Plan, it qualifies as such by virtue of being a "plan sponsor." Therefore, Meadowcraft, not Boston Mutual, would be the proper defendant in an action for breaches of Plan Administrator duties under ERISA. See 29 U.S.C. § 3(16)(A)(ii), (B)(i).

While noting that Snow may not have a viable remedy (assuming she could establish a breach) because Meadowcraft is no longer in business, the District Court explained that this "reality … does not alleviate Plaintiff of her burden to establish the essential elements of her claim…" The District Court's decision is not only supported by the ERISA statute and the Plan documents, but also by Meadowcraft's former human resources personnel who unequivocally testified that Meadowcraft was the Plan Administrator for all of the Company's Plans.

Further, Snow's claim that Boston Mutual qualifies as a "Plan Administrator" because it "drafted all plan documents" and had to "consent" to any amendments is equally unavailing. First of all, Boston Mutual did not unilaterally

design the Plan.  Meadowcraft, as the Plan Sponsor, negotiated the terms of the coverage and crafted the design of the Plan as reflected in the application. Second, the design and adoption of an ERISA Plan is a settlor function, not a fiduciary act. Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996) (explaining that when plan sponsors adopt, modify or terminate ERISA plans, "they do not act as fiduciaries but are analogous to settlors of a trust.") (citations omitted). Third, the design of the Plan has nothing to do with Snow's claim for equitable relief; rather, her grievance lies with the Meadowcraft's alleged failure to provide her late husband with a plan description or other meaningful disclosures regarding the Plan. Again, Boston Mutual, the Plan insurer, was not responsible for making those disclosures.

**AFFIRMED.**